SPURLOCK *v.* STATE.

(Division A. Oct. 13, 1930.)

[130 So. 155. No. 28859.]

**S. D. Neill**, of Indianola, for appellant.

Edwin R. Holmes, Jr., Assistant Attorney-General, for the state.

McGowen, J., delivered the opinion of the court.

The appellant was indicted, tried, convicted, and sentenced to the penitentiary for life by the verdict of the jury, for making an assault, with intent to rape, on Mrs. Maud Wilson.

The prosecutrix, Mrs. Maud Wilson, was a deaf mute, and her testimony was delivered through an interpreter in the court below. The material part of the evidence was to the effect that on the night of December 24, 1929, she was alone with her baby in her home, which was situated about fifteen yards from the public road. There

was snow on the ground. She said she heard a knock on the front door, and upon opening it saw a negro, whereupon she slammed the door; she then saw the man go around the house, and later heard him breaking in the back door. The house is described as a "shotgun house" —two rooms in a row, with a middle door. She then states that he appeared in her room, picked up a broom which was in the room, and pointed it at her. The only light in the room was the light from the fire, which was burning. She states that he caught her by the throat, choked her, and when she screamed, opened his knife; there was a slight cut on her arm and in her hand. When she screamed again he released his hold upon her throat and arm, and ran away. She then took her baby and went to the home of a neighbor, about two hundred yards away, and reported the incident.

She states that on the following day the appellant was brought by a large crowd of men to the front of her house, where she says that she identified him as being the man who assaulted her in her room. It plainly appears that after the appellant was carried to her house, he was turned over to a constable or deputy sheriff, and carried to the jail.

Mrs. Wilson testified that she reported the matter to her husband upon his return from a trip to Yazoo City, after nine o'clock; the assault having occurred between eight and nine at night. She said that she told her relatives she had scratched the negro on the face and neck, and described him as being rather low and small in stature and light colored.

We have stated her evidence in the strongest light possible from the standpoint of the state. The district attorney constantly led her, and she frequently made statements, which she afterwards corrected, upon leading questions.

A witness for the state testified that the tracks were easily discernible in the snow; that they were small boot tracks, and led from the porch or the front room, around to the back, or to the side, and off to the yard, where a washpot had been taken, and carried to the house, where it was used as a means of climbing into a window on the side of a rear room; and that the entrance was made through this window.

A number of white men went to a negro's home about three-quarters of a mile away, and asked for the appellant; and although he was standing in plain view, none of these witnesses recognized him from her description. They said that the old negro man replied that he was not there. The men went away some distance and watched the house, and the old negro, in company with the appellant, got into a car and drove away. They then secured the assistance of other men, followed appellant, and arrested him at a filling station, where the car had been stopped. One witness said there was a fresh scratch on appellant's forehead. When arrested he had on different clothes from those described by the prosecutrix, and was wearing shoes instead of boots. The tracks led away from the Wilson home, down the public road, in the direction of the place where Spurlock was first found; and the witnesses said that the shoes of the appellant fitted the tracks in the snow.

On behalf of defendant several witnesses testified to an alibi, accounting for the movements of the appellant from sundown until four o'clock the next morning. A physician testified that he examined the appellant in the jail two or three days after the accident, and there were no scars on him save the scar on his forehead, which was an old one, being from a wound in which he (the physician) had taken six stitches when treating it.

It was shown by three witnesses for the appellant that when he was carried before the prosecutrix for identification, she "looked him over carefully," then shook her

head and walked back into her room. Her relatives testified that she identified him then and there. The defendant's witnesses testified, as stated, that she did not identify him. Only the prosecutrix and relatives of the family were offered for the state. It was shown that there were from twenty to two hundred men present at the time of this identification. However, the prosecutrix swore on the trial that the appellant was the man who entered her room, and that the night of the assault was the first time she had ever seen him.

Appellant insists that he was entitled to the peremptory instruction requested by him, and refused by the court, because: First, the identification of the accused was wholly insufficient; and, second, conceding that the identification was sufficient, and that the appellant was in the room, still the evidence only shows an aggravated assault and battery, and does not show, or tend to show, that it was done with intent to rape. A complete crime of assault and battery is shown by the evidence.

First, as to the identification, we will only say that while the evidence is far from satisfactory, yet there is a conflict therein, and for that reason we cannot say that the jury were not warranted in believing the evidence for the state on the question; hence we do not reverse the cause.

Second, as to the sufficiency of the evidence to sustain the finding of the jury that the act committed by the appellant upon the person of the prosecuting witness showed an intent to rape, we have painstakingly examined this record, and find no hint in the testimony of the prosecuting witness—the only witness testifying on that point, since the appellant denied being present—that the act evinced any intention to gratify lust; and to uphold the conviction we should be forced to have recourse to an inference. Did the bare fact of entering the room burglariously, and putting his hands upon the throat, arm, and neck of the prosecutrix in a violent manner,

justify the inference that the appellant did so with intent to rape, rather than to commit some other crime?

Affirming the conviction in this case—springing perhaps from an instinctive racial feeling—would be tantamount to declaring that because of the audacity of the accused, a member of the colored race, in laying violent hands upon the throat and neck of the prosecuting witness, a white woman, intent to rape might be inferred; and that the mere probability that the act was committed with intent to rape will be sufficient to support a verdict of guilty.

In the case of Ben Green v. State, 67 Miss. 356, 7 So. 326, the facts were as follows: The evidence showed that the prosecutrix was riding alone on horseback along the highway, when the defendant, a strange negro man who had followed her on foot for a short distance, ran up and caught her riding skirt with one hand, whereupon she urged on her horse and escaped, the defendant fleeing in another direction. It was held that the evidence was insufficient to support a verdict of guilty. In that case Judge Cooper said: ''The probabilities may be greater that a rape was intended, rather than robbery or murder; but mere probability of guilt of a particular crime, and that, too, springing more from instinct than from proved facts, cannot support a verdict of guilty. There is great danger of improper convictions in cases of this character, and, while the court should not for that reason invade the province of the jury, the danger admonishes us of the necessity of standing firmly upon the right and duty of proper supervision and control of them.''

It could just as well be supposed in the instant case that the appellant intended to commit robbery, and fled upon finding that she did not have jewelry or other valuables, as to suppose that he intended to rape. The prosecuting witness made no statement evincing any lustful passion on the part of the accused, or any act tending to show such design on his part,

The position of this court in this respect was long since stated in apt language by Chief Justice CAMPBELL, in the case of Monroe v. State, 71 Miss. 196, 13 So. 884.

The state cites the case of Thompson v. State, 124 Miss. 463, 86 So. 871, 873, in which Judge ETHRIDGE, speaking for the court, emphasized the fact that the accused testified that he was in the room for the purpose of stealing; that his statements were contradictory; that he knew the Assyrian girl was at home alone (he had been there and bought milk); that later she heard a knocking or tapping on the wall inside the house, which continued for thirty minutes; and that the accused, after having attracted her attention, and caused her to come in the house from the porch, caught the woman by the throat and scratched her, fleeing when she screamed. The appellant based his defense upon the proposition that he was in the house to steal. Judge ETHRIDGE held as follows: "It is unreasonable to believe that a thief would continue to knock on the walls to attract attention, but it is probable that he would make the noise if he had in view the committing of the crime with which he was charged, because it would be necessary in some way to entice the girl from the front porch into the house where the crime could be committed," and affirmed the judgment of the lower court. The crime there under review was committed in the daytime; the girl was on the front porch; and in Judge ETHRIDGE's opinion the evidence was sufficient to warrant the jury in believing that the accused, knowing the girl to be alone, although he had an opportunity to steal without danger of interruption, evinced by his continued knocking on the wall, and thus causing her to come into the house where he could seize her, an intention to commit the crime of rape upon the person of the girl.

From the meager facts in this case it cannot be inferred that the appellant intended to commit the particular crime charged in the indictment, and on the record in the

case we cannot allow the judgment of the lower court to stand.

From the standpoint of the state the appellant is guilty of a misdemeanor.

Reversed and remanded.