Jimmy Paul NORTON a/k/a Jimmy Ray Norton, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–16367.

Court of Criminal Appeals of Oklahoma.

May 5, 1971.

Tom Harley of Scott, Groom, Woody & Harley, Oklahoma City, for plaintiff in error.

Larry Derryberry, Atty. Gen., Mike D. Martin, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Jimmy Paul Norton a/k/a Jimmy Ray Norton, hereinafter referred to as defendant was charged, tried and convicted in the District Court of Oklahoma County of the offense of Assault With Intent To Commit Rape; his punishment was fixed at five (5) years imprisonment and from said Judgment and Sentence a timely appeal has been perfected to this Court.

Briefly stated the evidence at the trial adduced that Judy Munger, a part-time beautician, testified she left the Glenwood Club in Midwest City with Donna Williams between 1:00 A.M. and 1:30 A.M. on the morning of May 3, 1970, to look for a lost purse. Not finding it, she returned to the club alone. She said that shortly thereafter Donna Williams entered the back door of the club screaming someone was going to kill her, her mouth and nose bleeding, a knot above her eye and her wiglet gone.

The State next called Donna Kay Williams, a married woman employed at Western Electric, who testified she was returning to the Glenwood Club after looking in vain for Judy Munger's purse, when the defendant came up behind her and put his arm around her neck. When she screamed, defendant struck her, knocking her to the ground where he beat her with his fists, stating repeatedly he wanted to have sexual intercourse with her and that he was going to kill her. She testified that while trying to fend off defendant and escape, defendant managed to drag her to the back of the building. After throwing her to the ground and choking her, defendant jerked her to her feet and started pulling her further toward the back of the build-

ing. She testified a car came by and one James Hunter appeared at the back door of the club. Upon Hunter's inquiry of what was happening, defendant let her go and began running. Thereupon she entered the club and was then taken to the hospital. During the time she was being attacked, her appeals to defendant for release went unheeded; in addition she testified defendant jerked the buttons from her vest during the struggle. She further testified defendant grabbed her "along my breasts and down there."

The next witness for the State was James Hunter, a truck driver who testified he saw defendant holding Donna Williams by both arms at the back of the club as he was leaving his apartment. That Mrs. Williams broke loose from defendant, who took off running. Hunter caught him and turned him over to the police.

The State next called Thomas Eugene Hurley to the stand. He testified that as he was leaving the club in a car with one Jim Hiles, he saw defendant holding Mrs. Williams by both arms. As the car left the club parking lot and entered the street, he saw her laying down on her back with defendant bent over choking her. After telling Mr. Hiles what he saw, Mr. Hiles backed the car; as Mr. Hurley was leaving the car, he saw James Hunter viewing the scene. Mr. Hurley next viewed the defendant in the custody of Mr. Hunter a short distance from the assault scene. He testified that as he arrived upon the scene, he discovered Mrs. Williams' hair piece lying on the ground; that he turned it over to Mr. Hunter.

W. W. Pingleton, a medical doctor, testified he examined Mrs. Williams in the emergency room of the Midwest City Hospital about 2:40 A.M. on May 3, 1970. His examination revealed a broken nose, swelling and bruising about the face, and multiple subcutaneous hematomas on the back of her head and about her face (Tr. 80, 81). He testified that Mrs. Williams sustained substantial trauma to her head and face region; that she informed him she felt it was defendant's intent to sexually molest her.

The defense called the defendant as its only witness. He stated he stopped in Oklahoma City on his way to Wilson, Oklahoma, from his home in Thomas, Oklahoma, to get his sister-in-law to care for his wife who was expecting a child. Upon his arrival in Oklahoma City about 9:00 P.M. on May 2nd he went to the Glenwood Club, where he had three or four beers. From there he went to the Jet Stream Bar and drank more beer. He left there about 1:20 A.M. and went to the Glenwood Club. He testified that he had parked his car in the rear of the Glenwood Club and was approaching the club when he bumped into a woman, Donna Kay Williams. That the impact knocked her to the ground, and that defendant, to keep from falling, grabbed at Mrs. Williams. When he bent over to pick her up, she started screaming; in order to quiet her, he slapped her three or four times. Then someone hollered; he turned around and saw James Hunter. He then testified he started walking towards his car when Mr. Hunter intercepted him and held him for the police. He denied trying to get someone to get him a woman earlier that night.

James Hunter was recalled on rebuttal. He testified that the defendant asked him to call Brenda True, a former girl friend of the defendant. He refused to call because she was now married. Jo Lynn Heath, a waitress at the club, testified that the defendant offered her five dollars that night if she would tell him how to get hold of Brenda True, which information she did not have.

The sole proposition asserts that the evidence is wholly insufficient to sustain the charge of Assault With Intent To Commit Rape. The defendant concedes that he committed an Assault and Battery but that the evidence is insufficient to show that he intended to rape her at the time of the assault. We cannot agree with this contention. The victim testified that defendant grabbed her from behind, knocked

her to the ground and stated that he was going to have sexual intercourse and kill her. He repeated these statements several times. He attempted to pull her toward the dark end of the building. He jerked the buttons from her vest and grabbed her along her breasts. The struggle continued until it was observed by James Hunter. The victims account of what transpired was corroborated by Hunter's testimony observing the defendant holding her by both arms at the back of the club. Thomas Hurley, while leaving in a car, observed her laying on the ground with the defendant bent over choking her. The doctor testified as to the injuries and in his opinion she had sustained substantial trauma to her head and face which is inconsistent with the defense that defendant slapped her three or four times to quieten her down.

In the recent case of Garrison v. State, Okl.Cr., 473 P.2d 341 (1970), we favorably cited Pusley v. State, 22 Okl.Cr. 192, 210 P. 306, wherein the Court stated:

" 'That the defendant assaulted the prosecuting witness is established by apparently credible and uncontradictory testimony. As we view the evidence, the only controverted question for determination by the jury was the intent with which the assault was committed. The question of intent was one for the jury, under proper instructions on the law by the trial court. The circumstances un-der which the assault was committed and the nature thereof were such as to authorize the jury to infer that the defendant intended to rape the prosecuting witness. Under these circumstances we deem it our duty not to set a judgment of conviction aside on account of insufficient evidence, especially as the trial court refused to grant a new trial on this ground, and the trial court and the jury had the advantage of seeing the witnesses, observing their manner of testifying, and were in a much better position than is this Court to arrive at a right conclusion of the credibility of the witnesses and the weight to be given their testimony.' "

In the instant case the jury was instructed of Assault With Intent To Commit Rape, aggravated assault and battery and simple assault and battery. The jury ascertained that the defendant had the intent to commit rape and in accord with the authorities above set forth, the verdict will not be disturbed by this Court.

In conclusion we observe that the record is free of any error which would require reversal or justify modification, the punishment imposed is within the range provided by law and under such circumstances we are of the opinion that the Judgment and Sentence should be and the same is hereby affirmed.

BRETT and NIX, JJ., concur.