295 So.2d 778 (1974)
Floyd AIKERSON
v.
STATE of Mississippi.
No. 47934.
Supreme Court of Mississippi.
June 10, 1974.
Landman Teller, Jr., W.B. Duggins, Jr. Vicksburg, for appellant.
A.F. Summer, Atty. Gen., by William D. Boerner, Sp. Asst. Atty. Gen., Jackson, for appellee.
INZER, Justice:
This is an appeal from a second conviction of Floyd Aikerson resulting from an incident which occurred in Vicksburg, Mississippi. In the first instance, Aikerson was indicted, tried and convicted on a charge of kidnapping. That conviction was reversed on appeal to this Court due to a defect in the indictment. In our opinion in that case reported at 274 So.2d 124 (Miss. 1973), it was noted that the facts shown in the record on appeal did not come within the meaning of kidnapping as defined by pertinent Mississippi statutes and that the accused should be retried under a proper charge. Subsequently, at the July 1973 term of court appellant was reindicted, tried and convicted in the Circuit Court of Warren County on a charge of assault and battery with a deadly weapon with the intent to rape. He was sentenced to serve eight years in the State Penitentiary. From that conviction and sentence, he now appeals. We affirm the conviction only with respect to the charge of assault and battery and remand for proper sentencing.
The evidence for the state revealed that on Saturday afternoon March 4, 1972, appellant Floyd Aikerson, a black man, entered the small grocery store operated by Mary Farris Angelo, an elderly white woman, and asked to see Mickey Farris, brother of Mrs. Angelo. Mrs. Angelo informed him that her brother was not there at the time, but there was evidence that the appellant, an acquaintance and co-worker of Mr. Farris, was already aware that he was out of town on that date. Appellant stated that he had come to do some repair work for Mr. Farris. Mrs. Angelo suggested that the appellant come back after her brother returned, but appellant said he could do the work by himself. Mrs. Angelo then supplied him with a few tools, but appellant came back into the store a second *779 time for more tools and a third time to say that he could not complete the repair work. Mrs. Angelo then sent him to lock the building on which he had been working. When he returned with the keys, he asked to buy a pound of salami. At this time, appellant and Mrs. Angelo were alone in the store. As Mrs. Angelo was returning to the front of the store from the back of the store where the salami was kept, appellant met Mrs. Angelo and grabbed her with one hand while holding a knife to her face and throat with the other hand. Appellant dragged her into the back room of the store and threw her down onto the floor. Mrs. Angelo described this attack at the trial.
The door was open for business and when he dragged me to the back room the door was open but after I kept begging him when he dragged me and throw'd me on the floor with a knife in my face and my throat, one hand with the knife and one hand on my mouth and with his knees pressing me down to hold me down on the floor. And I kept begging him to leave me alone, whatever you want go ahead and take it and why are you doing this thing. I said, whatever you want I'll just give it to you, go ahead and take it. And I said why are you doing this thing; you'll get yourself in trouble; he said, I'm already in trouble. I said, well please go on and I'll forget about it and leave me alone and whatever you want I'll give it to you, go on and take it; he said, all right, hush, hush. So then he got up and left me and I was thinking he may want to rob the register but he ran on I got up to get my shoes, my shoes was knocked off my feet, and by the time I could find my shoes to get up and walk out of the back room he had already gone to the front door to close the door and turned the night latch lock and ran back there... .
When appellant returned to the back room of the store, he pushed Mrs. Angelo back down onto the floor. Mrs. Angelo continued her description of the attack:
He was over me with his knees down on me and one hand over my mouth so I wouldn't holler (sic) or scream, and the other hand with the knife in my face, and I had several cuts on my face, had a cut in the palm of my right hand and had a cut under my eye  I had to go to the doctor to get some stuff to heal them up and it was about two months before I could really get my side to feel better  so then I knew when he went and locked the door and came back that was the last of me, I could just see myself dead, was about to blackout. And I kept hollering (sic) and screaming and all he would say, "hush, don't scream; hush, don't scream," cause nobody could hear from that back room.
The evidence revealed that the wounds described by Mrs. Angelo were very superficial in nature. Mrs. Angelo then testified that she heard glass breaking and soon police officers were in the store having been alerted by a youth who heard Mrs. Angelo scream and saw the appellant peeking through a door to the back room.
Mrs. Angelo refused to speculate on just how much time elapsed from the time she was first attacked until the police arrived, but said only that, "it seemed to be long enough to kill anybody or do whatever they wanted to do." Other witnesses testified that the police arrived in less than ten minutes after receiving the call.
The investigating police officers testified that when they arrived at the grocery store the door was locked and that they had to break the glass in the door to get in. Once inside they went to the back room of the store and found Mrs. Angelo lying on the floor and appellant standing near and facing the window which was protected by bars. The arresting officers further testified that the appellant appeared intoxicated when they took him into custody.
*780 At the close of the case for the state, counsel for defense moved that the court enter a directed verdict of not guilty of the charge of assault and battery with intent to rape and submit to the jury only the issue of whether or not the assault and battery was committed. Counsel further made known to the court the appellant's willingness to plead guilty to assault and battery. The court overruled the motion, and the defense rested without offering evidence.
Several errors were assigned on appeal, but in view of the decision which we have reached, we need only discuss that assignment relating to the trial court's refusal to grant a directed verdict and accept the appellant's plea of guilty to assault and battery.
The indictment in this case was drawn under Mississippi Code 1942 Annotated, Section 2011 (1956), [§ 97-3-7 (1972)], which makes the intent with which the act was done a crucial element in the offense. Appellant argues that there is absolutely no evidence of any intent to commit rape in the record, but admits that an aggravated assault was committed for which the legislature has provided no additional penalty other than that provided for assault and battery at common law.
In Mississippi at the time of this trial there was no general statute covering the common law offense of assault and battery or aggravated assault and battery. All then existing statutes regarding assault and battery dealt with very specialized or particularized circumstances. The interplay of common law and statutory law with respect to various offenses involving assault and battery received discussion in Butler v. State, 212 So.2d 573 (Miss. 1968):
At common law assault or aggravated assault is ordinarily held to constitute a misdeameanor. The status of statutory assaults as felonies or misdemeanors depends, of course, on the specific statutes defining them. 6 C.J.S. Assault and Battery §§ 58-59 (1937).
Section 2560, Mississippi Code 1942 Annotated (1956), provides that every offense not covered by our statutes shall be indictable as heretofore in common law. Section 2561 provides that offenses at common law, even though they are indictable and punishable by special statutory provision, may be indicted as described or charged according to the common law or according to the statute. Section 2562 provides that when no penalty is provided by statute and where offenses are indictable at common law but no statutory penalty is prescribed, the punishment shall be a fine of not more than $500 and imprisonment in the county jail for not more than six months, or either.
Where the state desires to raise a common law offense insofar as punishment therefor is concerned, or its classification, it does so by enactment of a statute. Our statutes on assault and battery are Section 2011, which covers assault and battery with intent to kill; Section 2012 assault and battery with cowhide or a whip; and Section 2013, assault and battery by pointing or aiming a gun. Many cases of assault and battery, such as a fist fight, are not covered by statute and depend on the common law. (212 So.2d at 577, 578).
In this case the state chose to prosecute appellant under Section 2011 which also includes assault and battery with a deadly weapon with the intent to ravish or in an attempt to rape. To succeed in that endeavor, it was the burden of the state to show not only the commission of the assault and battery as charged, but also to show that the act was done with the intent to commit rape. The evidence is ample to support the charge of assault and battery but is lacking on the charge of attempted rape. There is nothing in the record before this Court that would distinguish the intent of the appellant to rape his victim from any other particular intent. During the entire time, both the appellant *781 and the victim were fully clothed, and there was no evidence that the appellant removed or attempted to remove any of his or his victim's clothes. Nor was there evidence that the appellant fondled or caressed his victim or attempted to do so. The evidence merely depicted a somewhat aimless attack wherein the appellant grabbed his victim, pushed her to the floor and held her there. The only words appellant spoke to the victim during the attack, "hush, hush, don't scream," and the comment, "I'm already in trouble." Such evidence of an attack upon a female by a male without more is not sufficient to support a finding of the intent to rape.
Although the appellant did have a drawn pocket knife when he attacked his victim, the evidence does not reveal that he attempted to use it in a manner that would show an intent to inflict serious bodily harm. See Griffin v. State, 196 Miss. 528, 18 So.2d 437 (1944) and Toler v. State, 143 Miss. 96, 108 So. 443 (1926). Furthermore, the state in its brief acknowledged that there was "absolutely no evidence of intent to rob, injure or kill the victim," and the victim admitted that her attacker had plenty of time to kill her or to do anything else he may have wished to do. The victim also stated that she thought the appellant was going to rob or kill her, but not once did she state or even intimate that she feared being raped. The evidence created no more than a probability that rape was intended. In Spurlock v. State, 158 Miss. 280, 130 So. 155 (1930), under somewhat similar facts, we pointed out that the mere probability that an assault was committed with the intent to commit rape is not sufficient to support a verdict of guilty. We quoted from Green v. State, 67 Miss. 356, 7 So. 326 (1890), wherein it was stated: "The probabilities may be greater that a rape was intended, rather than robbery or murder; but the mere probability of guilt of a particular crime, and that, too, springing more from instinct than from proved facts, cannot support a verdict of guilty." (158 Miss. 285, 130 So. at 156-157).
Having carefully reviewed the facts and in view of the absence of evidence of intent, we are of the opinion that a finding of any greater offense than common law assault and battery would not be justified by the evidence and that the trial court therefore erred in refusing to grant a directed verdict on the charge of assault and battery with a deadly weapon with the intent to rape and in not accepting the plea of guilty to the lesser included offense of assault and battery. For these reasons, this case is affirmed on the charge of assault and battery and remanded for proper sentencing under Mississippi Code Annotated, Section 99-19-31 (1972), with appellant being given credit for the time he has been incarcerated in jail.
Reversed in part, affirmed in part and remanded for sentencing.
RODGERS, P.J., and ROBERTSON, WALKER and BROOM, JJ., concur.