William Ray WATSON, Petitioner,

v.

Crispus NIX, Warden, Iowa State Penitentiary, and Attorney General of the State of Iowa, Respondents.

Civ. No. 81–351–D.

United States District Court, S.D. Iowa, C.D.

Feb. 9, 1982.

Gary B. Garrison, Des Moines, Iowa, for petitioner.

Thomas D. McGrane, Asst. Atty. Gen. of Iowa, Des Moines, Iowa, for respondents.

## MEMORANDUM OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS

VIETOR, District Judge.

This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by an inmate of the Iowa State Penitentiary at Fort Madison, Iowa, where respondent Crispus Nix is the warden.[1] Petitioner is serving a sentence of 20 years in prison imposed on February 18, 1975, by Iowa District Judge M.C. Herrick after petitioner was found guilty by a jury of assault with intent to commit rape in violation of Iowa Code § 698.4 (1973). The conviction was affirmed by the Iowa Supreme Court. *State v. Watson,* 242 N.W.2d 702 (Iowa 1976).

The sole claim asserted by petitioner is that he was denied due process of law under the Fourteenth Amendment to the Constitution of the United States on the ground that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt, specifically proof of intent to commit rape, beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This issue, of course, is submitted upon the record evidence adduced at the trial. The court also has before it the threshold question of whether petitioner exhausted his state remedies.

---

1. Since this action was commenced, named respondent David Scurr ceased serving as warden of the Iowa State Penitentiary and he has been replaced by Crispus Nix, who is automatically substituted as a respondent under the provisions of Fed.R.Civ.P. 25(d)(1).

## EXHAUSTION

28 U.S.C. § 2254 provides in part:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Examination of the exhaustion issue requires a review of some United States Supreme Court and Iowa Supreme Court decisions as well as a review of petitioner's state court litigation.

In 1970 the United States Supreme Court held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship, supra,* 397 U.S. at 364, 90 S.Ct. at 1072.[2]

Petitioner's trial was conducted in January of 1975. Petitioner introduced no evidence. At the conclusion of the state's evidence petitioner's counsel moved for a directed verdict on the ground, *inter alia,* that "[t]he State has not introduced evidence sufficient to generate a jury question or from which the jury can find beyond a reasonable doubt that if there was any such assault by defendant that the assault was with the intent to commit rape * * *." Petitioner's counsel did not cite the due process clause of the United States Constitution or *In re Winship, supra,* or any other case authority. The motion was denied.

2. The *Winship* holding had been assumed in numerous expressions of the Supreme Court dating back to the last century. *See In re*

On appeal to the Iowa Supreme Court petitioner again challenged the sufficiency of the evidence on the necessary element of intent to commit rape, but again his counsel did not cite the due process clause of the Constitution, *In re Winship, supra,* or any other due process case. The court held that the evidence was sufficient. *State v. Watson, supra,* 242 N.W.2d at 705.

On June 28, 1979, the United States Supreme Court decided *Jackson v. Virginia, supra,* holding

that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

*Jackson v. Virginia, supra,* 443 U.S. at 324, 99 S.Ct. at 2791 (footnote omitted). The Court stated that "Under the *Winship* decision, it is clear that a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim." *Id.* at 321, 99 S.Ct. at 2790.

On February 20, 1980, the Iowa Supreme Court decided *State v. Robinson,* 288 N.W.2d 337 (Iowa 1980), a sufficiency of the evidence case. The court reviewed its historical sufficiency of evidence standard as follows:

*Required quantum of evidence.* At one time this court examined the record to see if it contained "competent" evidence of guilt. *See State v. Pray,* 126 Iowa 249, 253, 99 N.W. 1065, 1066 (1904). *See also,* 23 C.J.S. Criminal Law § 910, at 593–94 (1961); 23A C.J.S. Criminal Law § 1139, at 349 (1961) (consideration of prior scintilla of evidence rule). Later this court examined for "substantial" evidentiary

*Winship,* 397 U.S. 358, 362, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970).

support. *See State v. Gibson,* 189 Iowa 1212, 1233, 174 N.W. 34, 42 (1919).

The evidentiary measure this court now applies we recently explained in this way: "In reviewing these rulings we view the evidence in the light most favorable to the State, without regard to contradiction or inconsistencies and assisted by all reasonable inferences. *If there is substantial support for the verdict in the record, the jury verdict is conclusive." State v. Jones,* 271 N.W.2d 761, 763 (Iowa 1978) (emphasis added, citation omitted). We have also said that "where the verdict is clearly against the weight of the evidence" a new trial should be granted. *State v. Tokatlian,* 203 N.W.2d 116, 119 (Iowa 1972). *See* present Iowa R.Crim.P. 23(2)(b)(6) (new trial when "verdict is contrary to law or evidence"). We have said that evidence is "substantial" when a reasonable mind would accept it as adequate to reach a conclusion. *General Telephone Co. of Midwest v. Iowa State Commerce Commission,* 275 N.W.2d 364, 370 (Iowa 1979); *City of Davenport v. Public Employment Relations Board,* 264 N.W.2d 307, 311 (Iowa 1978).

*State v. Robinson, supra,* 288 N.W.2d at 338.

After discussing and quoting *Jackson v. Virginia,* the court went on to state:

We do not agree with Robinson that the measure of proof announced in *Jackson* is inconsistent with our substantial evidence rule. Substantial evidence, under the definition we have already stated, means such evidence as could convince a rational trier of fact that defendant is guilty beyond a reasonable doubt. Examination of past criminal cases in which sufficiency of the evidence was an issue demonstrate that such is the manner in which this court has applied the substantial evidence rule. *See, e.g., State v. White,* 223 N.W.2d 163, 165 (Iowa 1974) ("We hold that there was substantial evidence reasonably supporting the charge against defendant."); *Tokatlian,* 203 N.W.2d at 119 ("[W]here the evidence when viewed in the light [most favorable to the prosecution] is found to be substantial and reasonably tending to support

the charge, a conviction should not be disturbed."); *State v. Cartee,* 202 N.W.2d 93, 97 (Iowa 1972) ("[The evidence] clearly discloses adequate substantive evidence from which the jury could reasonably conclude Cartee at the time here concerned, inflicted death-causing injuries to his wife."); *State v. Gilroy,* 199 N.W.2d 63, 67 (Iowa 1972) ("[T]he record discloses adequate substantive evidence from which the jury could reasonably conclude money was taken during the fatal Fareway Store incident. From this also flows the unavoidable conclusion, there was sufficient evidence to support the jury verdict . . . .").

We find considerable support in the decisions of other courts for defining substantial evidence as such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *See United States v. Green,* 548 F.2d 1261, 1266 (6th Cir.1977); *United States v. Harper,* 450 F.2d 1032, 1040 (5th Cir.1971); *United States v. Delay,* 440 F.2d 566, 568 (7th Cir.1971); *Woodard Laboratories v. United States,* 198 F.2d 995, 998 (9th Cir.1952); *Dolchok v. State,* 519 P.2d 457, 460 (Alaska 1974); *State v. Bearden,* 99 Ariz. 1, 4, 405 P.2d 885, 886 (1965); *People v. Romo,* 47 Cal. App.3d 976, 986, 121 Cal.Rptr. 684, 690 (1975); *Youngker v. State,* 215 So.2d 318, 324 (Fla.Dist.Ct.App.1968); *State v. Taylor,* 445 S.W.2d 282, 284 (Mo.1969); *State v. Pendergrass,* 586 P.2d 691, 698 (Mont. 1978); *State v. Encee,* 79 N.M. 23, 24, 439 P.2d 240, 241 (1968); *Rhyne v. State,* 514 P.2d 407, 409 (Okl.Crim.App.1973); *State v. Hall,* 13 Wash.App. 620, 622, 536 P.2d 680, 682 (1975).

Because our substantial evidence test is generally consistent with *Jackson,* we refuse to abandon it. One aspect of that test, however, requires modification.

We have often stated that "[i]t is necessary to consider only the supporting evidence whether contradicted or not" when considering sufficiency of the evidence. *Tokatlian,* 203 N.W.2d at 119. We now hold instead that although Iowa

courts view the evidence in the light most favorable to the prosecution they must consider *all* the evidence when determining the sufficiency of the evidence to support a guilty verdict. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution."). A court could not determine whether any rational factfinder could have returned a guilty verdict if the court considered only the evidence which supports guilt, because a rational factfinder cannot render a verdict without taking into consideration all the evidence in the record. *See Jackson,* 443 U.S. at 336, 99 S.Ct. at 2798, 61 L.Ed.2d at 585 (Burger, C.J., and Stevens and Rehnquist, JJ., concurring in judgment). We therefore abandon the rule enunciated in *Tokatlian* and earlier cases that only the supporting evidence is considered when the sufficiency of evidence to support a guilty verdict is challenged. This modification of the *Tokatlian* rule applies only to trials of criminal prosecutions beginning on or after the day the present opinion is filed, and to cases tried before the filing of this opinion in which the question was preserved and which are now on appeal or are timely appealed after the filing of this opinion.

*State v. Robinson, supra,* 288 N.W.2d at 339–40.

■ The respondents contend that petitioner has not exhausted his state remedies because he has not sought to have the state courts review the sufficiency of the evidence to support his conviction under the *Jackson* and *Robinson* standard.[3] Although respondent does not argue the point, the court will also consider as part of the exhaustion issue the fact that petitioner did not, in the state trial court or in the state supreme court, expressly ground his claim of insufficient evidence on the due process clause of the United States Constitution or on *In re Winship, supra,* or on any other due process case. It is appropriate to raise this aspect of the exhaustion issue sua sponte out of respect for state-federal comity. *Batten v. Scurr,* 649 F.2d 564, 567 (8th Cir.1981).

■ Claims by defendants in state court that they were denied a "fair trial" without citation to any provision of the federal Constitution or to any federal constitutional case law have been held to be insufficient presentations of the federal constitutional issue to the state courts. *Batten v. Scurr, supra,* 649 F.2d at 568; *Thomas v. Wyrick,* 622 F.2d 411, 413 (8th Cir.1980). In connection with these holdings, it is important to note that everything that is "essential to the fair and impartial conduct of the trial," *Brasfield v. United States,* 272 U.S. 448, 450, 47 S.Ct. 135, 136, 71 L.Ed. 345 (1926), is not necessarily required by the due process clause of the Constitution. *Cornell v. Iowa,* 628 F.2d 1044, 1046–48 (8th Cir.1980). In other words, every claim of denial of a fair trial is not necessarily synonymous with a claim of denial of federal constitutional due process. However, since at least 1970, a claim by a defendant that the evidence is insufficient to establish guilt beyond a reasonable doubt is a claim that a conviction on such evidence violates the due process clause of the Constitution. *Jackson v. Virginia, supra; In re Winship, supra.* Therefore, petitioner's claim in the state courts that "[t]he state has not introduced evidence sufficient to generate a jury question or from which the

---

**3.** In connection with the exhaustion issue, respondents also contend that petitioner deliberately bypassed a state remedy by failing to raise the sufficiency of evidence issue on appeal from the state district court's dismissal in 1979 of his application for postconviction relief under the provisions of Iowa Code Ch. 663A. In the dismissed application, petitioner did assert, *inter alia,* that there was insufficient evidence to sustain his conviction. Because I find and conclude that he had exhausted his state remedies in his direct appeal and that any further effort to relitigate the issue in state courts would have been futile, the intentional bypass question need not be further considered.

jury can find beyond a reasonable doubt * * that the assault was with the intent to commit rape * * * " was sufficient to present the substance of the due process issue. Expressly citing the Fourteenth Amendment or *Winship* would have added nothing to the dimension of the claim.

 Even if petitioner did not sufficiently present his federal constitutional issue to the Iowa Supreme Court in his direct appeal, his habeas corpus application should nevertheless be entertained on its merits. The exhaustion doctrine is based on principles of comity rather than jurisdiction. *Cage v. Auger,* 514 F.2d 1231, 1232–33 (8th Cir.1975). The respect rightfully due to state-federal comity does not require that the exhaustion doctrine be applied so inflexibly as to require that a futile application to the state courts be made. *See Rogers v. Wyrick,* 621 F.2d 921, 924 (8th Cir. 1980); *Parton v. Wyrick,* 614 F.2d 154, 157 (8th Cir.), *cert. denied,* 449 U.S. 846, 101 S.Ct. 131, 66 L.Ed.2d 56 (1980). There appears to be absolutely no possibility that the Iowa courts would accord petitioner a new review of the sufficiency of the evidence of intent to rape under the *Jackson* and *Robinson* standard. In *State v. Robinson, supra,* 288 N.W.2d at 340, the Iowa Supreme Court held that it would not apply the *Jackson* standard of looking at all the evidence to pre-*Robinson* convictions. This nonretroactivity policy was reiterated in *State v. York,* 293 N.W.2d 13, 15 (Iowa 1980).[4] Thus it is clear that the *Jackson-Robinson* review that respondents contend petitioner must first seek in the state courts would not be granted by the state courts.

Furthermore, it appears that petitioner in fact did receive a *Jackson-Robinson* type of review by the Iowa Supreme Court on his direct appeal. The *Robinson* decision establishes that the Iowa substantial evidence standard, which was in effect at the time

petitioner's conviction was affirmed, is the same as the *Jackson* standard except for the requirement of considering *all* of the evidence. Simply stated, the Iowa rule in effect when petitioner's conviction was affirmed applied the "rational trier of fact" standard, but it measured only the evidence supporting guilt rather than all the evidence. In cases arising since the *Robinson* decision, the Iowa courts must consider all of the evidence. In petitioner's case, however, the evidence supporting guilt was all the evidence. Petitioner introduced no evidence. The Iowa Supreme Court's decision discloses that the court, although mentioning its then-rule of reviewing "only that which is favorable to the State, whether contradicted or not," *State v. Watson, supra,* 242 N.W.2d at 705, did in fact consider all the evidence. None of the state's evidence was contradicted. (Some minor inconsistencies, common to the testimony of witnesses in most any case, cannot fairly be considered to contradict the state's evidence.) Indeed, the court stated it had "given serious consideration to [the lack of sexual suggestions and advances in the state's evidence]" and concluded by stating: "The *total circumstances* were such that the jury could find defendant assaulted Miss Berry with the intent to rape her." *Id.* (Emphasis supplied.)

The conclusion is inescapable that the Iowa Supreme Court's review of the evidence was actually no different from what it would have been had the review occurred after the *Jackson* and *Robinson* decisions and the standard of those cases had been expressly applied.

Petitioner has exhausted his state remedies, and any further attempt at state review would be futile. The merits of his claim must be reached.

---

4. It is clear that this federal court must apply the *Jackson v. Virginia* standard retroactively to petitioner's 1975 conviction. *See Pilon v. Bordenkircher,* 444 U.S. 1, 100 S.Ct. 7, 62 L.Ed.2d 1 (1979) (per curiam); *Moore v. Duckworth,* 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979) (per curiam); *Lenza v. Wyrick,* 665 F.2d 804, 811–812 (8th Cir.1981); *Holloway v. McElroy,* 632 F.2d 605, 636–39 (5th Cir.1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981); *Knutson v. Brewer,* 619 F.2d 747, 751 (8th Cir.1980). The reasons for retroactive application are thoroughly set forth in *Holloway v. McElroy, supra.*

## RECORD EVIDENCE ADDUCED
## AT TRIAL

The circumstances leading to the prosecution of petitioner for assault with intent to commit rape began about 1:30 in the afternoon on November 26, 1974. At that time 17-year-old Dianne Berry was walking from her parents' home to the Woolco Store on Southeast Fourteenth Street in Des Moines, Iowa, to meet her mother. As Miss Berry walked along Park Avenue a Volkswagen stopped and petitioner, a passenger in that vehicle, which was driven by William Halsted, asked her if she wanted a ride. Miss Berry, who did not know either of the men, accepted and got into the rear of the auto. Petitioner then locked the passenger door.

Miss Berry told the two men her destination. When they approached that point she told them where to let her off. Halsted, however, drove past that location and proceeded in a southerly direction. In response to Miss Berry's inquiry if she could get out, petitioner told her she would have to ask the driver, Halsted. She did so and Halsted said no. Miss Berry testified that she repeatedly asked to be let out of the car and each request was refused, either by silence or verbally. Miss Berry further testified that after the two men refused to let her out of the car she suggested that they go to a girlfriend's house where "we can get high." The home she was going to direct the men to was that of her boyfriend; she hoped to escape from the two men. The men, however, said no to her suggestion.

Halsted drove the vehicle south on Indianola Road towards the outskirts of Des Moines. At the point where Indianola Road intersects with a four-lane divided highway Halsted failed to stop at a stop sign and narrowly avoided colliding with another vehicle. Petitioner told Miss Berry not to worry because they were not stoned. Halsted began driving back towards Des Moines but reversed his course and drove south on the highway. Miss Berry testified that she told the men that she would get out along the highway and Halsted said, "I am sure I am going to let you out on the highway." Halsted also told Miss Berry

that they were going to a friend's house. Eventually Halsted turned off the highway in a rural area onto a gravel road. Halsted stopped the car at a deserted farmstead. Halsted suggested they go into an old barn on the farmstead. Miss Berry refused and suggested they go down to a nearby pond and "get high." The two men and Miss Berry started walking down the gravel road toward the pond. Instead of going to what Miss Berry thought was a pond the three walked down into a ditch or shallow ravine on the side of the road opposite the pond. When the three reached the bottom of the ditch petitioner produced a brown piece of paper, apparently expecting Miss Berry to have some marijuana. She informed the men that she did not have any and the two men "got kind of mad." Miss Berry further testified that one of the men, she believed it was Halsted, said, "we are just wasting time," and "we shouldn't have come down here." The three were in the ditch for about three minutes.

The three then returned to the gravel road to return to the area of the car. Miss Berry began walking in the opposite direction toward a farmstead some seven to eight blocks away. After taking a few steps she was stopped by Halsted, who grabbed her arm. (This was the first time either of the men touched her.) The three resumed walking toward the car but Miss Berry bolted from them and began to run in the opposite direction. Both men chased Miss Berry and Halsted grabbed her around the neck and petitioner grabbed her by the arm or waist. A brief scuffle ensued. Miss Berry testified that Halsted was choking her and that she was afraid she would black out. She further testified that the two men tried to pick her up. Miss Berry struggled with the men and screamed. Halsted told her to shut up or she would really get hurt.

The men apparently became frightened when a farmer from an adjoining farm loudly inquired what was going on. One of the men grabbed Miss Berry's purse and shoved her. She stumbled and fell. The men ran to their car and Miss Berry ran in the opposite direction. At this time a truck

came upon Miss Berry and the driver, Dennis Six, stopped and Miss Berry got into the truck. Mr. Six asked what was wrong. She testified that she told Mr. Six, "those guys tried to rape me and they took my purse." Mr. Six testified that Miss Berry said "those guys tried to rape me" four or five times and, in addition, said that "one of them held a knife at her." On cross-examination Mr. Six testified that Miss Berry said "they [the two men] are crazy and one of them has a knife." Mr. Six further testified that Miss Berry's face looked like it had been "smacked quite a few times."

Dennis Six, with Miss Berry in the truck, chased the two men who were speeding away in their car. Six rammed the car in an attempt to disable it. The chase was abandoned when petitioner brandished a knife out of the car window.

The automobile in which the men were travelling was stopped by a Warren County deputy sheriff and the two men were arrested. A boy scout pocket knife was taken from petitioner and introduced at his trial. There is no indication that petitioner or Halsted possessed any drugs at the time they were stopped. Miss Berry's purse was located along a road near the abandoned farmstead.

## SUFFICIENCY OF THE EVIDENCE

■ Iowa law at the time in question defined rape as sexual intercourse with "any female by force or against her will." Iowa Code § 698.1 (1973).[5] To be guilty of assault with intent to commit rape in violation of Iowa Code § 698.4, one had to commit an assault on a female with the specific intent to engage in sexual intercourse with her "by force or against her will." Intent to have sexual intercourse was not sufficient—the intent had to be to have sexual intercourse notwithstanding the female's refusal and resistance. *State v. Ramsdell,* 242 Iowa 62, 45 N.W.2d 503, 507 (1951). The trial court correctly instructed the jury on the element of specific intent.

Petitioner is entitled to habeas corpus relief if the evidence of the necessary intent is insufficient to meet the *Jackson v. Virginia* standard.

After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS,* 385 U.S. [276] 282 [87 S.Ct. 483, 486, 17 L.Ed.2d 362] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana,* 406 U.S. [356] at 362 [92 S.Ct. 1620, 1624, 32 L.Ed.2d 152]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

*Jackson v. Virginia, supra,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89 (footnotes omitted).

■ A federal habeas corpus court is not permitted "to make its own subjective determination of guilt or innocence." *Id.* at 320 n. 13, 99 S.Ct. at 2789 n. 13. Furthermore, the state appellate court's conclusion

---

5. The 66th General Assembly subsequently repealed most of the Iowa criminal statutes, including Chapter 698, and enacted a new criminal code, Chapter 709 of which covers "sexual abuse" offenses.

that the evidence was sufficient, although not conclusive, is entitled to great weight. *Id.* at 322 n. 15, 99 S.Ct. at 2791 n. 15; *Lenza v. Wyrick,* 665 F.2d 804, 812 (8th Cir.1981). These cautions do not, of course, preclude federal habeas corpus relief under the *Jackson v. Virginia* standard if the record evidence adduced at trial was insufficient, as attested to by the issuance of writs in the following cases. *Fuller v. Anderson,* 662 F.2d 420 (6th Cir.1981); *Harris v. Blackburn,* 646 F.2d 904 (5th Cir.1981); *Holloway v. McElroy,* 632 F.2d 605 (5th Cir.1980); *Littles v. DeFrancis,* 517 F.Supp. 1137 (M.D.Ga.1981); *Bentley v. Cox,* 508 F.Supp. 870 (E.D.Va.1981); *Delk v. Atkinson,* 498 F.Supp. 1282 (M.D.Tenn.1980); *United States ex rel. Newell v. Mizell,* 497 F.Supp. 442 (C.D.Ill.1980); *Cunha v. Brewer,* Civil No. 73–135–2 (S.D.Iowa June 26, 1980) (unpublished opinion).[6]

The record evidence adduced at petitioner's trial discloses that neither petitioner nor Halsted ever verbally suggested a sexual encounter of any kind to Miss Berry or touched her in a sexual way. Indeed, Miss Berry was not touched at all by either of the men until she endeavored to leave, and that touching, which certainly constituted a violently rough assault and battery,[7] was not in the nature of a sexual advance.

A review of some court decisions passing on the sufficiency of evidence in intent to rape cases aids this court in evaluating whether, under the record evidence adduced at petitioner's trial, a rational trier of fact could have found proof of intent to commit rape beyond a reasonable doubt. Most of the cases were reviewed under standards slightly different from the *Jackson* standard—usually only the evidence in support of guilt was examined—but they are nevertheless of instructive value.

Countless cases have held that an assault coupled with evidence of a sexual comment or a sexual touching or an attempt to remove an article of the victim's clothing or some other action that reasonably appeared preparatory of sexual intercourse was sufficient to prove an intent to rape. Some of these cases are: *United States v. Iron Shell,* 633 F.2d 77, 80–82 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *Upshaw v. Powell,* 478 F.Supp. 1264, 1266–67 (E.D.Wis.1979); *Philpot v. State,* 43 Ala.Cr.App. 326, 190 So.2d 293, 296 (1966); *Walker v. State,* 256 Ark. 154, 506 S.W.2d 537, 538 (1974); *Smith v. State,* 157 Ga.App. 238, 276 S.E.2d 905, 907 (1981); *White v. State,* 417 N.E.2d 912 (Ind. 1981); *Louisiana v. Day,* 391 So.2d 1147 (La.1980); *People v. Booth,* 58 Mich.App. 466, 228 N.W.2d 425, 427 (1975); *State v. Peterson,* 262 N.W.2d 706, 707 (Minn.1978); *Loyd v. State,* 624 P.2d 74, 75 (Okla.Cr. 1981); *Norton v. State,* 484 P.2d 1342 (Okla. Cr.1971); *Lhost v. State,* 85 Wis.2d 620, 271 N.W.2d 121, 122 (1978); *Leach v. State,* 83 Wis.2d 199, 265 N.W.2d 495, 502 (1978); *Adams v. State,* 57 Wis.2d 515, 204 N.W.2d 657, 659 (1973).

In petitioner's trial, however, there was no evidence of the sort that sustained the convictions in the above cited cases. At oral arguments, I asked respondents' counsel to cite any case or cases in which an intent to rape conviction was upheld without any more evidence of the necessary element of specific intent than appears in petitioner's case. Counsel cited only one case, *Ingram v. Commonwealth,* 192 Va. 794, 66 S.E.2d 846 (1951).

*Ingram v. Commonwealth,* the appeal of a black man convicted of attempted rape of a young married white woman in her own home, was decided over 30 years ago by the supreme court of a southern state. Defendant knocked on the front door of the wom-

---

**6.** Appellate reviews under the *Jackson v. Virginia* standard have also resulted in reversals of federal district court convictions. *United States v. Shaver,* 651 F.2d 236 (4th Cir.1981); *United States v. Baker,* 650 F.2d 936 (8th Cir. 1981); *United States v. Marolda,* 648 F.2d 623 (9th Cir.1981).

**7.** The trial judge properly submitted to the jury as lesser included offenses the misdemeanors of assault and assault and battery. Iowa Code § 694.1 (1973).

an's house between 8:30 and 8:45 p.m. after she was in bed asleep. Dressed in her night-clothes and a robe, she came to the door and opened it. He asked her if her husband wanted to sell his car. She told him that she did not know and that he would have to see her husband. Defendant asked her if her husband was at home and she said no. (There was evidence that defendant probably knew when he came to the house that the woman's husband was away.) Immediately after that, defendant started choking her with both hands. She screamed and he put one hand over her mouth. A neighbor heard the scream and shouted that she would be there in a minute, whereupon defendant fled. The Virginia Supreme Court stated:

> This is one of a class of cases which gives us much concern. It may be said to be a borderline case because, in the absence of any declared intent or purpose by the accused, the question of his intent must be determined from the outward manifestation of his actions leading to usual and natural results, under the peculiar facts and circumstances disclosed. This determination presents a factual question which lies peculiarly within the province of the jury.

*Ingram v. Commonwealth, supra,* 66 S.E.2d at 850. In concluding to affirm the conviction, the court stressed that there was no evidence of a motive to commit any other crime. The court dismissed the fact that defendant did not try to remove the woman's clothing by observing that he had no opportunity to do so under the fast happening circumstances. *Id.* The court said that the evidence and lack of any explanation "tend to show no motive other than to gratify his lust by the rape of the prosecutrix." *Id.,* 66 S.E.2d at 851. The court added:

> For what purpose would a man attack a defenseless woman, at night, dressed in her night clothes? Inferences and deductions from human conduct may be properly [sic] when they follow naturally from facts proven. In this case, the conduct of the accused, under the conditions and circumstances described, points with reason-

able, if not with unerring certainty, to his specific intent to commit rape. It is inconsistent with his innocence, or with any interpretation save that of such an intent.

*Id.,* 66 S.E.2d at 851.

Factors heavily relied on by the Virginia court are not present in petitioner's case. Petitioner and Halsted had abundant opportunity to manifest their intention to rape if that was their intention. Furthermore, the stealing of Miss Berry's purse during the assault on her is evidence of a motive "other than to gratify [their] lust by the rape of the prosecutrix."

This court finds a line of Mississippi Supreme Court decisions holding the evidence to be insufficient to sustain attempted rape convictions to be compellingly well reasoned. The progenitor case is *Green v. State,* 67 Miss. 356, 7 So. 326 (1890), in which a black man was convicted of attempted rape of a white woman. She was riding a horse, and he ran after her and caught hold of her riding skirt. She screamed and struck her horse and got away from him. The court reversed, stating:

> The evidence is insufficient to support the verdict of the jury. We may conjecture the purpose of the defendant to have been to commit a rape, but, on the facts disclosed, it is conjecture only, and not an inference reasonably drawn from the evidence. The probabilities may be greater that a rape was intended, rather than robbery or murder; but mere probability of guilt of a particular crime, and that, too, springing more from instinct than from proved facts, cannot support a verdict of guilty. There is great danger of improper convictions in cases of this character, and, while the courts should not for that reason invade the province of the jury, the danger admonishes us of the necessity of standing firmly upon the right and duty of proper supervision and control over them.

*Id.* 7 So. at 326.

*Green* has been followed and quoted in many Mississippi attempted rape cases, in-

cluding the more recent cases of *Aikerson v. State,* 295 So.2d 778 (Miss.1974), and *Tremaine v. State,* 245 Miss. 512, 148 So.2d 517 (1963). In *Tremaine* the defendant, who gained entry to the woman's home by an apparent ruse, grabbed her bathrobe and yanked it up and then grabbed her arms. She broke away and ran outside. The court stated that "there is a strong probability that appellant intended at the time to use force against the prosecutrix," *id.,* 148 So.2d at 519, but found "proof" lacking and reversed. In *Aikerson* the defendant, a black man, was convicted of assault and battery with a deadly weapon with intent to rape an elderly white woman. The intent to rape portion of the conviction was reversed for insufficient evidence, the court stating:

> There is nothing in the record before this Court that would distinguish the intent of the appellant to rape his victim from any other particular intent. During the entire time, both the appellant and the victim were fully clothed, and there was no evidence that the appellant removed or attempted to remove any of his or his victim's clothes. Nor was there evidence that the appellant fondled or caressed his victim or attempted to do so. The evidence merely depicted a somewhat aimless attack wherein the appellant grabbed his victim, pushed her to the floor and held her there. The only words appellant spoke to the victim during the attack, "hush, hush, don't scream," and the comment, "I'm already in trouble." Such evidence of an attack upon a female by a male without more is not sufficient to support a finding of the intent to rape.

*Aikerson v. State, supra,* 295 So.2d at 780–81. The court further stated:

> The evidence created no more than a probability that rape was intended. In *Spurlock v. State,* 158 Miss. 280, 130 So. 155 (1930), under somewhat similar facts, we pointed out that the mere probability that an assault was committed with the

intent to commit rape is not sufficient to support a verdict of guilty. We quoted from *Green v. State,* 67 Miss. 356, 7 So. 326 (1890), wherein it was stated: "The probabilities may be greater that a rape was intended, rather than robbery or murder; but the mere probability of guilt of a particular crime, and that, too, springing more from instinct than from proved facts, cannot support a verdict of guilty." (158 Miss. 285, 130 So. at 156–157).

*Id.* at 781.

A California case, *People v. Greene,* 34 Cal.App.3d 622, 110 Cal.Rptr. 160 (1973), is also instructive. As the 16-year-old victim was walking down the street at 11:00 p.m. from a babysitting job to her home, the defendant came up to her and put his arm around her waist and turned her around, saying: "Don't be afraid. I have a gun. Don't move." She felt something hard in her side. She asked him what he wanted and he said, "I just want to play with you," and he moved his hand up and down her waist a little. She tried to get away and said, "No, no." He told her to stop it and be quiet. She became quiet, but then she successfully broke away. The court held that the evidence was insufficient to sustain a finding that defendant had an intent to engage in sexual intercourse by force or violence. As for the girl's testimony that she feared rape and understood his remark to indicate "possible rape," the court soundly observed that her evaluation of the situation could not prove an assault with intent to rape because it is the defendant's state of mind, not the victim's, which is in issue. *Id.* at 179.[8]

In *Oakley v. State,* 22 Wis.2d 298, 125 N.W.2d 657 (1964), a 5–2 majority of the Wisconsin Supreme Court found that the evidence was insufficient to sustain an attempted rape conviction. The evidence showed that defendant gained entry into

---

8. Evidence of Miss Berry's declarations to Mr. Six that petitioner and Halsted tried to rape her was properly admitted into evidence at petitioner's trial as res gestae utterances. *State v. Watson,* 242 N.W.2d 702, 704 (Iowa 1976).

However, such evidence cannot supply sufficient proof of the intent of the accused for the reasons expressed in *People v. Greene,* 34 Cal. App.3d 622, 110 Cal.Rptr. 160, 179 (1973).

the victim's car by a ruse, drove her several blocks away where he persisted for a long time in trying to engage her in sexual intercourse by means which the court described as "gross, obscene and highly reprehensible." *Id.* at 662. In reversing, the majority observed that the victim "was successful in staving off Oakley's advances by verbal pleadings and protestations, and by pushing his hand away," *id.,* and concluded "that there is no credible evidence in this record upon which the jury could have been convinced beyond a reasonable doubt that Oakley was guilty of the crime charged." *Id.* at 663.

Discussion of other cases holding the evidence insufficient to sustain a finding of intent to rape would unduly extend this memorandum opinion, which is already lengthy.[9]

■ One may reasonably conjecture that petitioner and Halsted desired sexual intercourse with Miss Berry, and one may reasonably conjecture that they intended to satisfy that desire notwithstanding her refusal and resistance. However, as the Mississippi Supreme Court lucidly noted in *Green v. State, supra,* conjecture is something less than an inference reasonably drawn from the evidence. Probability of guilt springing from instincts rather than proved facts is not enough to sustain an intent to rape conviction. There must be *evidence* of the intent. The "what else could they have had in mind?" reasoning of the respondents is not sufficient.

■ The court finds that upon the record evidence adduced at petitioner's trial no rational trier of fact could have found proof of guilt, specifically proof of intent to commit rape, beyond a reasonable doubt.[10] Therefore, his conviction violates the due process clause of the Fourteenth Amend-

ment to the United States Constitution. The conviction must be set aside and the writ of habeas corpus must issue.

In issuing the writ, I join in the following observation made by Judge Wiseman in *Delk v. Atkinson, supra,* 498 F.Supp. at 1284:

It is with the greatest reluctance that this Court or any federal court intrudes upon a state criminal proceeding in which the accused was found guilty by a jury properly instructed as to the requirement of proof beyond a reasonable doubt, a finding approved in turn * * * by the state's court of last resort. However, the very purpose of federal habeas corpus is the protection and vindication of federal constitutional rights, and when these rights are imperiled, considerations of comity must give way. *See Jackson v. Virginia, supra,* 443 U.S. at 322, 99 S.Ct. at 2791; *Webb v. Court of Common Pleas,* 516 F.2d 1034, 1036 (3d Cir.1975).

■ Because the writ is being issued on the ground of insufficiency of evidence, the state cannot be granted the option of retrying petitioner on the assault with intent to commit rape charge because a retrial would unconstitutionally place petitioner in double jeopardy. *Burks v. United States,* 437 U.S. 1, 17–18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978); *Bentley v. Cox, supra,* 508 F.Supp. at 878.

### ORDER GRANTING WRIT OF HABEAS CORPUS

Petitioner's application for writ of habeas corpus is granted, and IT IS HEREBY ORDERED that, upon expiration of ten days as provided in Fed.R.Civ.P. 62(a), the clerk shall issue a writ of habeas corpus commanding respondent Warden Crispus Nix to

---

**9.** A couple other cases holding evidence of intent to rape insufficient are *United States v. Tremble,* 152 U.S.App.D.C. 363, 470 F.2d 1272 (1972), and *Moss v. State,* 492 P.2d 1329, 1334 (Wyo.1972).

**10.** The evidence was probably sufficient to support other felony charges that the prosecutor apparently chose not to bring against petition-

er, such as kidnapping, Iowa Code § 706.1 (1973), which carried a 5 year sentence; robbery, Iowa Code §§ 711.1, 711.2 & 711.3 (1973), 10 or 25 year sentence depending on whether there was aggravation; and larceny from the person, Iowa Code § 709.6 (1973), 15 year sentence.

release petitioner, William Ray Watson, from custody to the extent that his custody is based on the sentence and judgment of the Iowa District Court in and for Warren County entered on February 18, 1975.