THOMPSON *v.* STATE.

[86 South. 871, No. 21516.]

1. RAPE. *Evidence sustaining conviction of assault with intent to ravish.*

   Where it appears from the evidence on the trial for assault with intent to ravish that the defendant knew that the prosecuting witness was at home alone, and he entered the house secretly and then knocked on the wall to attract and entice the female assaulted into a room in the back part of the house, repeatedly knocking on the wall at intervals for a half hour or more to attract the attention of the female, and that when her attention was attracted she went into such room, and there found the defendant with face covered, approached her and· caught her by the throat, and placed his other hand on her mouth and tried to push her against the wall, and when the female pushed his hand off mouth and screamed, he fled, and afterwards denied being at the house, but on trial testified that he entered the house for the purpose of stealing, and where it appears that nothing was stolen or taken, though food and other things were in the house where he entered undisturbed, the evidence is sufficient to sustain a conviction of assault with intent to ravish.

2. CRIMINAL LAW. *Court may call attention of jury to failure to assess punishment.*

   Where a jury returns a verdict of guilty as charged under section 1359, Code 1906 (Hemingway's Code, section 1096), without fixing the punishment, it is not error for the court to orally call their attention to such power, especially where the court has given written instructions thereon and request the jury to put their verdict in proper form.

3. CRIMINAL LAW. *Where judgment below illegal, supreme court may impose sentence in proper form.*

   Where the judgment of the court below does not show that the defendant was placed at the bar of the court and sentenced in due form, but shows the verdict of the jury fixing the punishment and remands the prisoner to the custody of the sheriff until he is called for by the authorities of the state penitentiary, and where there is no other error in the trial court, this court will impose sentence in proper form under section 4919, Code 1906 (Hemingway's Code, section 3195).

APPEAL from circuit court of Lauderdale county.

HON. C. C. MILLER, Judge.

Percy Thompson was convicted of an assault with intent to ravish, and he appeals. Affirmed.

*C. B. Cameron,* for appellant.

This appellant has assigned as error the refusal of court to grant him a peremptory instruction. This assignment I submit is well taken in the light of this record. The appellant should have been indicted, tried and convicted on a charge of trespass and not the charge preferred. There is not a single line of testimony in the record which bears out the charge and I am at a loss to understand why the learned trial judge ever submitted this cause to the jury.

The court erred in orally instructing the jury as shown by special bill of exceptions. The record clearly shows oral instructions by court and this in the face of decisions of this court condemning this practice. The court here actually told the jury to retire and change their verdict in two different instances. This cannot be countenanced by the law nor upheld by the court. The special bill of exceptions shown on page 80 of record discloses the fact that the trial court orally instructed the jury as to the punishment to be inflicted in the event of a conviction.

The jury had returned a verdict without fixing the punishment and the court orally instructed them as to the punishment and ordered the jury to retire, all of which was done over the objection of the appellant as shown by special bill of exceptions on pages 80 and 81 of record.

The jury retired and again returned a verdict into court convicting the appellant on charge in affidavit and fixing his punishment at life imprisonment. Thereupon the court at the instance of the district attorney orally examined the jury as to whether they meant to say indictment instead of affidavit, same being done over objection of the appellant; thereupon the court ordered the jury to

retire and change their verdict. This done over the objection of the defendant ,the jury retired and presently came into court with verdict of guilty as charged in the indictment and fixed punishment at imprisonment for life.

I submit that action of the court in orally instructing the jury was fatal error for two reasons. 1. The same is forbidden by section 793, of Code 1906, as construed by this court in numerous decisions. *Watkins* v. *State*, 60 Miss. 323; *Baugs* v. *State*, 61 Miss. 363; *Williams* v. *State*, 32 Miss. 389; *Edwards* v. *State*, 47 Miss. 581; *Johnson* v. *State*, 78 Miss. 627; *Gilbert* v. *State*, 78 Miss. 300. 2. The oral instruction as given was not a proper construction of section 1359, of Code of 1906, under which indictment was drawn. Section 1359 of Code 1906, reads: "Every person who shall be convicted of an assault with intent to forcibly ravish any female of previous chaste character shall be punished by imprisonment in the penitentiary for life, or for such shorter time as may be fixed by the jury."

The court instructed the jury so shown by special bill of exceptions that the question of punishment was out of his hands entirely and that it was up to the jury to fix the punishment. This is incorrect. The statute fixes the punishment at imprisonment in the penitentiary for life, or for such shorter time as may be fixed by the jury.

In the case at bar the jury attempted to fix the punishment by their verdict at imprisonment for life, when the statute only conferred upon the jury the right to fix the punishment at and for a shorter time. In other words the jury had nothing to do with the punishment unless they agreed to fix the same for a shorter time than life imprisonment. By the instruction the jury was told that they should fix the punishment in event of a conviction at imprisonment in penitentiary not to exceed life. This is not the law, the statute under which indictment was drawn does not authorize this instruction.

The jury fixed the punishment at life imprisonment under these written and oral instructions and in so doing

124 Miss.—30

undertook to administer punishment already prescribed by statute and with which they were not concerned under the law. See case of *Barton* v. *State*, reported in 94 Miss. 375, where the court undertook to impose a sentence of five years in a case where the jury returned a verdict of guilty as charged in the indictment. This was held to be error by the court.

For these errors I respectfully submit that this cause should be reversed and remanded.

*H. Cassedy Holden*, attorney-general, for appellee.

The appellant complains that the verdict is contrary to the evidence. It is submitted that the testimony of the prosecutrix, if believed, makes out a case against the defendant, and is sufficient to convict. It is true she did not attempt to say what the motive of her assailant was. His purpose can be judged only by his actions. If he only entered the house to steal, why did he go into the residence instead of the store. If the theft was his sole purpose, why did he attack the prosecutrix, instead of simply making his escape when discovered. And why did he deny any connection with the occurrence when accused by Sheriff Martin?

A judgment will not be set aside on the ground that the verdict is contrary to the evidence unless it be clearly wrong and it is a case of palpable error, prejudice or passion. *Gamblin* v. *State*, 45 Miss. 658; *Schwall* v. *State*, 21 So. 660; *Alexander* v. *State*, 21 So. 923; *Brown* v. *State*, 103 Miss. 639, 60 So. 726; *Simmons* v. *State*, 109 Miss. 605, 68 So. 193; *Wells* v. *State*, 112 Miss. 76, 72 So. 859.

Where there is a palpable failure of the proof to sustain the verdict, a reversal will follow. *White* v. *State*, 2 Miss. Dec. 562; *Porter* v. *State*, 1 Miss. Dec. 555; *Campbell* v. *State*, 1 Miss. Dec. 413; *Dennis* v. *State*, 91 Miss. 221; *Harris* v. *State*, 71 Miss. 462, 14 So. 266; *Monroe* v. *State*, 71 Miss. 196, 13 So. 884; *Jones* v. *State*,

91 Miss. 868, 45 So. 145; *Howell* v. *State,* 104 Miss. 295, 61 So. 314; *Hunt* v. *State,* 108 Miss. 588, 67 So. 57.

The supreme court will not reverse merely because, if, sitting as a jury, it would have returned a different verdict. *Brown* v. *State,* 102 Miss. 639, 60 So. 726; *Jackson* v. *State,* 105 Miss. 782, 63 So. 269; *Felder* v. *State,* 108 Miss. 580, 67 So. 56.

No Error in Instructions. The appellant complains that the court erred in orally instructing the jury as shown by the special bill of exceptions at page 80 of the record. As to that part of the oral instructions relating to the fixing of the punishment by the jury, it is submitted there was no error. The court had already instructed the jury in writing that it was their duty to fix the punishment, not exceeding life imprisonment, when they returned simply verdict in accordance with the law as contained in the written instructions. If the written instruction at page 73 of the record be correct, then it was not error for the court to require the jury to return to the jury room and frame their verdict in accordance therewith.

The jury first returned this verdict: "We, the jury, find the defendant guilty as charged in the affidavit." As defendant was being tried on an indictment, this verdict was not in the proper form. It next returned this verdict: "We, the jury, find the defendant guilty as charged in the affidavit and fix his punishment at imprisonment for life." For the same reason, this verdict was not in proper form. Whereupon the court polled the jury, and each juror responded that he meant to say "indictment" instead of "affidavit." The jury was, thereupon, returned to the jury room and returned the following verdict: "We, the jury, find the defendant guilty as charged in the indictment and fix his punishment at imprisonment for life." No error can be successfully predicated of the court's conduct in this connection.

If there be doubt or uncertainty in the language of the verdict, the court may make such inquiry of them as will enable him to understand their will and intention, and

may then direct that the verdict thus ascertained be recorded. *Gipson* v. *State,* 38 Miss. 295; *Shine* v. *State,* 42 Miss. 331; *Owens* v. *State,* 82 Miss. 18, 33 So. 718, 21 L. R. A. (N. S.) 782; *Avant* v. *State,* 88 Miss. 226, 40 So. 483; *Thompson* v. *State,* 88 Miss. 223, 40 So. 545; *Sykes* v. *State,* 92 Miss. 427, 45 So. 838.

The appellant complains that the written instruction for the state, which appears at page 73 of the record, is an erroneous statement of the law. It is urged that under section 329, Code of 1906, the jury could not fix the punishment unless it fixed same at something less than life imprisonment; that it had no power to fix the punishment at life imprisonment. It is submitted that the plain and obvious meaning of the above section is to leave the punishment with the jury. But granting that the intent of the statute is otherwise, that part of the verdict fixing the punishment in this case is mere surplusage; this may be stricken out, and a valid and proper verdict of guilty remains, the penalty being automatically fixed at life imprisonment by the state. The instruction of the court may possibly be erroneous, but the error, if any, is not material or prejudicial. This court will not under Rule 11, reverse a case for harmless error. *Jones* v. *State,* 104 Miss. 871, 61 So. 979.

Judgment and Sentence of the Court. It appears that the only judgment rendered by the court in pursuance of the verdict, was to remand the defendant to the custody of the sheriff to await the penitentiary authorities. The jury fixed the punishment at life imprisonment, but the court failed to impose a sentence in accordance with this verdict. There is doubt, therefore, if there be a valid judgment of the court below. The court should have sentenced th defendant in accordance with the verdict of the jury.

· In this situation, it would be proper for this court to dismiss this appeal. However, the state is willing that the court pass upon the merits of the case and render a judgment of affirmance or reversal. If affirmed by this court, the case may be remanded to the lower court for the

imposition of a sentence in accordance with the verdict
of the jury. If reversed, the case may be remanded for a
new trial, or the appellant may be dismissed by this court.

Conclusion. This was a case peculiarly for the jury.
Especially as to the intention of the defendant in break-
ing into the house and in seizing, choking, and scratching
the prosecutrix. Candor compels the writer to here ad-
mit that there is no direct testimony as to the motive of
the defendant, aside from his own statement, and there
are no facts which would appear to seriously and directly
contradict the defendant's statement. In a spirit of fair-
ness, I wish to refer the court especially to the language
of its opinion in *Howell* v. *State,* 104 Miss. 295, 61 So.
314, and in *Hunt* v. *State, supra*; also, *Monroe* v. *State,*
71 Miss. 196, 13 So. 884. May it please the court, the
writer of this brief fully realizes his duty as prosecutor
for the state; but if it be the part of that duty to urge
upon this court the affirmance of a doubtful conviction,
at any time, then I shall sigally fail in its performance,
for the voice of conscience is more commanding to me than
the urge of such a duty. The defendant should be pun-
ished. Of that, I have no doubts; but, try as I have, I
cannot reconcile my sense of justice and right to the guilt
of this defendant, as charged, beyond all reasonable doubt.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was indicted and convicted of an assault
upon an Assyrian girl, a female of previous chaste char-
acter, with the willful and felonious intention to ravish
and carnally know the said female, and was convicted and
sentenced to the pen for the term of his natural life, from
which sentence this appeal is prosecuted.

It is assigned for error that the court erred in refusing
a peremptory instruction for the appellant because the
evidence was insufficient to sustain the verdict. Second,
it is assigned for error that the court erred in instructing
the jury orally as to their verdict, and also that the judg-
ment rendered is insufficient and void.

The prosecutrix was living with her father in the suburbs of the city of Meridian. She had only been in the United States about three months and could not speak the English language with any degree of proficiency, and her evidence was taken by the aid of an interpreter. She testified that on the morning of the day in question her father and the rest of the family left the home between 9 and 10 o'clock in the morning to attend a service at a church; that in going they passed the house of the appellant, which was on the road between the home of the prosecutrix and the church, and shortly after the family left the appellant came to the house and bought some milk, which was delivered to him and for which he paid and then took his departure; that she was alone at home from that time until the assault and sat upon the front gallery facing the public road in a swing. That some time between 11 and 12 o'clock in the morning she heard a knocking or tapping on the wall inside the house and went into the house to ascertain what it was, but saw nothing; that she continued to hear a tapping noise in the house at intervals until about thirty minutes after the first tapping when she heard a loud noise as though a bucket had turned over; that she then went through the house to the dining room, passing through a bedroom on the way, and when she got into the dining room she saw the appellant in the cook room behind the door with something over his face; that she became frightened and started to back into the bedroom, when the appellant approached her, seized her by the throat, and placed his other hand over her mouth, and was backing her toward the wall of the house; that she exerted all her strength and pushed his hand from her mouth and screamed, and when she screamed the appellant left her and ran and jumped out of the dining room window. She screamed several times and went to the front gallery and attracted the attention of a neighbor.

The prosecutrix further testified that the doors on the back side of the house were locked, and that the appellant entered the dining room through a window on the south

side thereof from which the screen had been torn away, the screen having been nailed to the window. She further testified that there was food in the dining room, which was entered, and that nothing was disturbed or stolen therefrom.

The neighbor, Mrs. Hyde, testified that she lived across the road from the east side of the house of the prosecutrix, and that when she first heard the scream she was in her cook room, and when she came through her dining room she heard the second scream, and she went out in front of her house and saw the girl come out on her front gallery, and then she, Mrs. Hyde, went on over to the girl and found her greatly excited, and that she had a scratch on the side of her throat, and that the girl related the occurrence to her.

The sheriff was notified and came out to the place and made an examination of the premises and of the dining room window, and interrogated the girl and her people about the matter and started to locate the party whom the witness, the prosecutrix, described to him, but another officer had already arrested the accused.

When the accused was first arrested he denied having been to this place and told the officer that he was at the residence of a negro woman whom he named. He was placed in jail and the negro woman named was sent for and denied that the appellant had been to her house or that she had seen him, and stated that she was not at home. After this the appellant stated to the sheriff that he did enter the home of the assaulted girl, but that he went there for the purpose of stealing. The father of the girl testified that the appellant had seen the girl around his store; that his store was attached to the front part of his residence, having an opening from the dining room to the store and also one from a bedroom to the store. There were three bedrooms, a hall, a back gallery, and a cook room, dining room, and store. A map or drawing of the store and residence is placed in the record.

The prosecutrix identified the appellant, and when the state closed its case the appellant made a motion to strike the evidence and for a peremptory instruction, which motion was overruled and exception taken. Thereupon the appellant took the stand and testified in his own behalf, and testified that he entered the house for the purpose of stealing something. Being asked what he intended to steal, he said anything he could find, money or anything. He stated that he thought the girl had gone with her family to church, and that he went to the house, approaching it from the back side, which was to the west, and knocked on an outside wall to see if any one was in the house, and that he waited two or three minutes and then tore away the screen and entered the house; that he had barely entered the house when the girl came back into the house, and that he then ran into the cook room and placed something over his head to keep her from seeing him; that she saw him; and that when he saw the girl had seen him he ran for the window of the dining room, which was the only place that he could get out of the house. He stated he did not touch the girl.

It will be seen from this statement that there is a material conflict between the appellant's evidence and that of the assaulted girl, especially as to the time the appellant was in the house and whether or not he seized the girl as she testified. In determining the sufficiency of the evidence we must look to the state's evidence, especially so far as it is not unreasonable or sufficiently explained by the other evidence. Taking the evidence of the girl and her father and the officers together, we think it was sufficient to support a verdict of guilty.

It is insisted by the appellant that the evidence of the state does not contradict the evidence of the appellant as to the crime intended, which appellant contends was theft. If the appellant had entered the house for the purpose of theft, it would appear that something would have been taken. If he entered the room for the purpose of theft and remained thirty minutes or more without find-

ing anything to steal, when, according to his own evidence, his purpose was to steal anything, it would be a little remarkable. There is no attempt to show by himself, nor does it appear anywhere in the evidence that he entered the store or made any attempt to enter it, but, on the contrary, all of the facts support the inference that he entered the house for the purpose of assaulting the girl. The whole case supports this theory and is inconsistent with the other theory. It is unreasonable to believe that a thief would continue to knock on the walls to attract attention, but it is probable that he would make the noise if he had in view the committing of the crime with which he was charged, because it would be necessary in some way to entice the girl from the front porch into the house where the crime could be committed.

The next error assigned for consideration is that the court erred in instructing the jury orally as to their verdict. The court gave a written instruction as follows:

"The court instructs the jury if you find the defendant guilty it will be your duty to fix such punishment as you may think from the evidence the defendant should suffer by imprisonment in the penitentiary, not to exceed life imprisonment."

After the jury returned to consider their verdict, they presently returned into open court with the following verdict:

"We, the jury, find the defendant guilty as charged in the affidavit."

Whereupon the presiding judge instructed the jury orally that, as he understood the law, the penalty in this case should be fixed by the jury; that is to say, told the jury that the number of years of imprisonment should be fixed by the jury, and that the question of punishment was in their hands, and not his, as he understood the law. Whereupon the defendant objected to the statement of the judge, and the court then and there ordered the jury to retire and fix the punishment in accordance with the law as

given them in their instructions; that thereupon the jury retired and presently returned into court the following verdict:

"We, the jury, find the defendant guilty as charged in the affidavit and fix his punishment at imprisonment for life."

Whereupon the district attorney requested the court to ask each juror if the jury meant to say "indictment" where they used the word "affidavit," and in accordance with said request the trial judge orally questioned each juror as to whether they meant "indictment" instead of "affidavit," and each juror orally responded that he meant "indictment," whereupon the court, over the objection of the defendant, ordered the jury to retire and correct their verdict, which was accordingly done, and the verdict as returned used the word "indictment" instead of "affidavit."

Section 1359, Code of 1906 (Hemingway's Code, section 1096), reads as follows:

"Every person who shall be convicted of an assault with intent to forcibly ravish any female of previous chaste character shall be punished by imprisonment in the penitentiary for life, or for such shorter time as may be fixed by the jury."

Under this section of the Code the punishment is fixed at life imprisonment unless the jury return a verdict fixing a less term of years. So, if the verdict as returned by the jury in the first instance had contained the word "indictment" instead of "affidavit," the sentence of the appellant would have been precisely what it is in the present state of the record, and no prejudice has resulted to him from the judge instructing the jury that they had the right to fix the time of the imprisonment. The statute intended to give the jury power to mitigate the punishment, and the judge's instruction to the jury informed them of this right, which was favorable to the accused rather than prejudicial to him. It was perfectly proper for the judge to interrogate the jurors as to their meaning

in using the word "affidavit." The trial was upon an indictment and there was no affidavit before the jury, and it was the duty of the trial judge before discharging the jury to see that the verdict was in proper form. The statute prohibiting the trial judge from giving instructions not in writing and not requested by one of the parties litigant has no application to a proceeding of this kind. When the jury renders a verdict which is not in proper form, the trial judge is not required to wait until counsel request written instructions as to the mere form of the verdict. It is the duty of the judge to see that the jury renders a legal verdict before discharging it, and that was all that was done in this case.

It is next assigned that the judgment of the court is improper and amounts to a nullity. The judgment is informal and reads as follows:

"This day came the district attorney, who prosecutes for the state of Mississippi, and comes the defendant in his own proper person and by counsel, C. C. Johnson and C. C. Cameron, and on being arraigned at the bar on a charge of attempted rape, doth enter a plea of not guilty, and for the truth of his contention he throws himself upon the country, and the district attorney doth the like. Issue now being joined, comes also a jury of good and lawful men, duly sworn, instructed, and impaneled, and accepted by both the state and the defendant herein, composed of W. O. Matheney and eleven others, who, after hearing all the testimony, arguments of counsel, and receiving the instructions of the court, retired to consider of their verdict, when they presently returned into open court the following verdict, to wit:

"'Meridian, Miss., August 9, 1920.

"'We, the jury, find the defendant guilty as charged in the indictment and placed in imprisonment for natural life.'

"It is therefore ordered by the court that the said defendant, Percy Thompson, be, and he is hereby, given into the custody of the sheriff of Lauderdale county, Miss., to

be held for the proper authorities of the state penitentiary of Mississippi."

The judgment does not show that the defendant was placed at the bar of the court and formally sentenced by the court to imprisonment for life in the penitentiary. This ought to be done.  Even in cases where the jury have a right to fix the punishment in their verdict, the punishment should be inflicted by the court it its judgment, but it will not be necessary because of this error or oversight to remand the case to the court below, because the conviction was proper on the evidence and instructions.

Section 4936.  Code of 1906 (Hemingway's Code, section 3212), reads as follows:

"A judgment in a criminal case shall not be reversed because the transcript of the record does not show a proper organization of the court below or of the grand jury, or where the court was held, or that the prisoner was present in court during the trial or any part of it, or that the court asked him if he had anything to say why judgment should not be pronounced against him upon the verdict, or because of any error or omission in the case in the court below, except where the errors or omissions are jurisdictional in their character, unless the record show that the errors complained of were made ground of special exception in that court."

Section 4919, Code of 1906 (Hemingway's Code, section 3195), reads as follows:

"The supreme court shall hear and determine all cases properly brought before it at the return-term, unless cause be shown for a continuance; and in case the judgment, sentence, or decree of the court below be reversed, the supreme court shall render such judgment, sentence, or decree as the court below should have rendered, unless it be necessary, in consequence of its decision, that some matter of fact be ascertained, or damages be assessed by a jury, or where the matter to be determined is uncertain; in either of which cases the suit, action or prosecution shall be remanded, for a final decision; and when so re-

manded, shall be proceeded with in the court below ac·
cording to the direction of the supreme court, or accord-
ing to law in the absence of such directions."

Under these sections of the Code the defective judgment
of the court will be set aside, and a judgment here enter-
ed in proper form sentencing the appellant to the peniten-
tiary in accordance with the verdict of the jury.

*Affirmed.*