ANDERSON *v.* STATE

No. 40546 May 27, 1957 95 So. 2d 465

*Lee, Moore & Countiss,* Jackson, for appellant.

*J. R. Griffin, Asst. Atty. Gen.*, Jackson, for appellee.

ETHRIDGE, J.

Appellant, Ive Anderson, was convicted in the Circuit Court of Scott County of grand larceny. The verdict was amply supported by the evidence. The jury was warranted in concluding that appellant aided and abetted the other man in the commission of the crime, participating in the criminal act in furtherance of the common design before and at the time the money was taken. Shedd v. State, 87 So. 2d 898 (Miss. 1956).

Nor was the argument of the district attorney error. The evidence for the State justified a finding that appellant and the other man with whom he was working had begun the necessary preliminaries toward the old pigeon-dropping fraud upon Laura Johnson, but, when Laura dropped the purse containing her money, they decided that their more elaborate scheme was not necessary, took her purse, and ran away with it. The district attorney, in his argument to the jury, described this confidence-game technique and argued that appellant and his accomplice had begun to use that fraudulent scheme, apparently abandoning it when they saw they could get the money in another way. This argument was based upon the evidence and was proper.

Appellant in his motion for a new trial, which was overruled, complained that the court erred in allowing the jury to change or amend its verdict after returning the same to the court; that the jury was improperly separated after a return of the verdict; and that the sheriff improperly communicated with the jury after it had retired from the bar upon rendition of its verdict. The facts with reference to this point are set forth in the finding of the circuit judge. ". . . the Jury was brought before the Court in the presence of the Defend-

ant, in open court, and the Court asked the Jury if they had agreed upon a verdict to which all jurors answered in the affirmative. He then instructed the Jury to hand the verdict to the Clerk to be read, and he directed the clerk to read the verdict. The clerk read a verdict which read: 'We, the Jury, find the defendant guilty as charged.' Immediately thereafter one of the Jurors, I believe it was a Mr. Sessums, notified the Court that the verdict was wrong and he inserted the word 'not', whereupon the verdict then read: 'We, the Jury, find the defendant not guilty as charged.' All this was in the presence of the Court and the Defendant in open court. Before the Jury had retired from the presence of the Court, the Court was informed first by one member of the Jury that that verdict as changed was wrong, because the Jury had found the Defendant guilty. The Court thereupon immediately ordered the Jury back to their Jury room for further deliberations. All the time the foregoing was transpiring, the Defendant was present in the bar of this Court, and the Jury had not been dismissed and they were present and still under supervision of the two bailiffs. After they had retired again to the jury room, they sent word to the Court they were ready to make a report. Whereupon the Jury was brought into open court and seated, and the Court asked the Jury if they had reached a verdict, and was informed by them that they had. Whereupon he instructed them to pass the verdict to the Clerk and directed the clerk to read the verdict, which he did read, and it was as follows: 'We, the Jury, find the Defendant guilty as charged.' The Court then secured the names of all the Jurors on this Jury and he asked each individual juror if that was his verdict and received an affirmative answer in response to the question. All of the jurors answered that the verdict of guilty was the verdict of the Jury. Thereupon the Defendant was sentenced to serve a term of five (5) years in the State Penitentiary.''

Both defendant and the State offered witnesses on the hearing of the motion for a new trial. W. S. Moore, one of the defendant's counsel, testified that after Sessums had written in the verdict the word "not", the circuit judge "discharged the jury without using the word 'discharged' . . ." However, the circuit judge expressly found that "the jury had not been dismissed and that they were present and still under supervision of the two bailiffs", when he directed them to retire to the jury room and decide upon their verdict. Moore admitted that the defendant never left the bar. He could not say whether any of the jury actually walked into the hall out of the courtroom, but one of the jurors informed the judge that the jury had made a mistake, that in fact it had found defendant guilty. Thereupon the judge called the jurors back and directed them to retire to the jury room and decide upon their verdict.

Sheriff Bruce Rushing testified that the jury returned a verdict of "guilty", and Sessums said it was wrong and inserted in it the word "not". The jury had not left the courtroom and was still in a group. They were coming to the door where the sheriff was standing, when he heard some of the jurors say that "not guilty" was not their decision. So the sheriff relayed this opinion to the judge, who told them to come back. The sheriff said that during this period neither he nor anyone else had any conversation with the jury, and to his knowledge there was no influence or coercion brought to bear upon them; and that none of the jurors told him the verdict was wrong, but he overheard their conversation, in which some of the jurors complained that the verdict of "not guilty" was wrong.

The two bailiffs testified that the jury had not been separated; that they were still in a group in the courtroom or at the door of the courtroom when the court called them back; and that they saw no one attempt to communicate with or to influence the jury during this

interim. One of the jurors was unavailable for suppoena, but the other eleven all testified that their true verdict was that of "guilty", that no one conversed with or attempted to influence them, although counsel for defendant did shake the hands of several of them. Several said that they had just gotten into the hall when they were called back.

With this testimony the circuit judge was amply warranted in concluding that the jury had not been separated prior to the time he called them back; that no one attempted to converse with or influence them; and that the occurrence had no possibility of prejudice to the rights of the defendant.

 █ Code of 1942, Section 1515 states: "If the verdict is informal or defective the court may direct it to be reformed at the bar. . ." See Serio v. City of Brookhaven, 208 Miss, 620, 634, 45 So. 2d 257 (1950). As in the Serio case, the verdict of the jury as originally returned was not a finding that defendant was not guilty. On the contrary, it is undisputed that the first verdict, as well as the last, was that of guilty. So State v. Chambliss, 142 Miss. 256, 107 So. 200 (1925) is not controlling. The original verdict of guilty was undisputedly the unanimous verdict of the jury and was signed by all twelve. The addition of the word "not" to the verdict by the juror Sessums was made by him mistakenly, and without the authority or consent of the other jurors. Sessums admitted that he was confused. He thought he was changing it to the intended "guilty." The verdict of the jury after it returned from the jury room following this incident was also without dispute that of guilty. So, in fact, the jury did not return a first verdict of not guilty, and did not then change it to guilty. The amended verdict was the same as its first verdict — guilty.

 █ The general rule is that the court may require the jury to clear up an indefinite and ambiguous verdict,

and, "Indeed, it is the duty of the court to direct the jury to reconsider their verdict when satisfied that there has been a palpable mistake." 23 C. J. S., Criminal Law, Sections 1412, 1413. Even after separation, but before the jurors have left the courtroom, the verdict has been corrected, if "they are at once recalled and the irregularity is corrected." Ibid., Section 1360. However, the circuit court found here that the jury had not been dismissed and had not separated.

In Thompson v. State, 124 Miss. 463, 86 So. 871 (1920), appellant was convicted of assault with intent to ravish. An instruction based upon the statute told the jury that it had the duty to fix punishment. However, the verdict only found defendant "guilty as charged in the affidavit." The trial judge then orally instructed the jury that the penalty should be fixed by it, and ordered it to retire and fix the punishment. This was done, at life imprisonment. This action of the trial judge was held to be "perfectly proper." The Court said, "It is the duty of the judge to see that the jury renders a legal verdict before discharging it, and that was all that was done in this case." See also Bowen v. State, 177 Miss. 715, 172 So. 151 (1937).

 The questions whether the jury separated before the judge called them back to the bar, and whether it is reasonably probable that undue influence was exerted by others, are for the decision of the trial judge, ". . . and his finding of fact on such issue should not be disturbed if supported by such substantial evidence as did convince him, and should convince the appellate court, that it is not reasonably probable that undue influence has been exerted. Of course, if it should be manifest on appeal that the decision of the trial judge is clearly wrong, a new trial should be ordered." Pepper v. State, 200 Miss. 891, 27 So. 2d 842 (1947). In this case the great weight of the evidence supports the finding of the circuit judge that the jury had not separated, and that no

outside influence was exerted. There is no evidence whatever that the sheriff exerted any influence on the jury. ██ █ Moreover, even if a brief separation occurred, under the peculiar circumstances of this case, Pepper v. State holds that a mere possibility that influence might have been used on the jury is not sufficient to justify the setting aside of the conviction. Here all of the evidence negates any outside influence. Moreover, the presumption of prejudice arising from an improper separation may generally be rebutted by an affirmative showing that the separated jurors were not so communicated with as to injure the defendant. And the testimony of the jurors, bailiffs and sheriff is undisputed that no prejudice resulted to defendant, even if it be assumed that there had been a brief separation. **(Hn 8)** For these reasons, there is no merit in appellant's contention that the action of the trial court in sending the jury back to return again their first and true verdict was improper and erroneous.

Affirmed.

*Hall, Lee, Arrington* and *Gillespie, JJ.,* concur.