881 So.2d 323 (2004)
Willie Earl CLAY a/k/a Willie E. Clay, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00235-COA.
Court of Appeals of Mississippi.
August 24, 2004.
Rehearing Denied November 2, 2004.
*324 James A. Williams, Brookhaven, attorney for appellant.
Office of the Attorney General by Charles W. Maris, Billy L. Gore, attorneys for appellee.
EN BANC.
CHANDLER, J., for the Court.
¶ 1. This appeal arises from a November 25, 2002 order of the Lauderdale County Circuit Court sentencing Willie E. Clay as an habitual offender after a jury found him guilty of burglary of a dwelling, pursuant to Mississippi Code Annotated section 97-17-23 (Rev.2000). Clay raises five issues on appeal challenging the manner in which identification testimony was introduced, the circuit court's handling of the jury's *325 apparent confusion over a lesser-included offense instruction, the effectiveness of trial counsel and the sufficiency of the evidence supporting the jury's verdict. He further asserts that the cumulative effect of the errors complained of denied his right to a fair and impartial trial. Finding no merit to these assignments of error, we affirm Clay's sentence and conviction.

FACTS
¶ 2. In mid-afternoon, on July 6, 2001, seventy-year-old Mary Katherine Duke heard a noise at her front door which sounded "like someone was tearing it up." She found the solid wood door kicked in and a man standing in her living room. She screamed at him; he looked at her without speaking and started toward her. As she started to run through the kitchen, he grabbed her blouse and pulled her back. She threw one chair in front of him and pushed another in his way before falling out the back door and down the steps. The man ran back out the front door and backed his car down the road.
¶ 3. Mrs. Duke's nephew, Langdon Duke, who lived in a trailer behind her house, heard his aunt's screams. He ran to her assistance and together they went around to the front yard where Langdon threw a rock at the intruder's car. Before calling the sheriff's department, they tried unsuccessfully to get a license tag number as the white, four-door car backed away.
¶ 4. Mrs. Duke testified at trial that the same man had come to her house the previous Sunday. He had inquired about a man named "Tuttle," claiming that he was responding to an ad in the newspaper. He also had asked to use her telephone and she brought a portable phone outside for him.
¶ 5. Ricky Presson, an investigator with the Lauderdale County Sheriff's Department, responded to Mrs. Duke's call and was assigned to investigate the case. The State Crime Laboratory was not able to make an identification of any fingerprints taken at the scene. Based on the Dukes' description of the intruder and his car, however, the sheriff's deputies thought Clay might be a suspect. Investigator Presson prepared a line-up of some photographs, including Clay's. He testified that when he first showed the line-up to Mrs. Duke, she became very frightened and said she would have to see the individual in person to make a positive identification. She later identified a more recent picture of Clay in another photo line-up Presson prepared.
¶ 6. Investigators then questioned Clay's girlfriend, Betty Doss, about Clay's whereabouts at the time of the crime, and the vehicle he was driving. Her description of a white 1985 Suburu with a dented right side matched the description given to Presson by Mrs. Duke and her nephew. It subsequently was found in the possession of a local mechanic, Jimmy Hopson, to whom Clay had given the car as security for money he borrowed from Hopson to buy back the car title from a local "Title for Cash" store.
¶ 7. Clay's girlfriend brought him into the sheriff's office on July 10, 2001. He gave a statement to Investigator Presson, admitting that he had been at Mrs. Duke's home. Clay, however, told authorities that he had knocked on Mrs. Duke's door to ask if she had seen the man he had been looking for previously and if she needed any yard work done. Clay stated that he asked her if he could have some water and when she turned to go inside, he thought she wanted him to come inside, too. He stated that "when I stuck my leg inside the door she panic [sic] and started hollering and pushing the door." He further claimed to have panicked, too, and started *326 walking "real fast" to his car, while Mrs. Duke "was screaming and hollering stuff."
¶ 8. On August 1, 2002, Clay was indicted by the grand jury of the Lauderdale County Circuit Court for burglary of a dwelling. His trial was held on November 25, 2002. Clay elected not to testify. The jury returned two separate verdicts, finding him guilty of burglary of a dwelling as well as of the lesser included offense, illegal trespass. After the circuit judge re-instructed the jury that it could return only one verdict, the jury deliberated further and found Clay guilty of burglary of a dwelling. Clay's motions for a mistrial, a new trial and a motion for a JNOV were denied by the circuit court. Clay was sentenced as an habitual offender to serve twenty-five years in the custody of the Mississippi Department of Corrections.

LAW AND ANALYSIS

I. WHETHER CLAY WAS DENIED A FAIR TRIAL BY THE IDENTIFICATION TESTIMONY GIVEN BY INVESTIGATOR RICKY PRESSON
¶ 9. Clay first asserts that he was prejudiced by the State's questioning of Investigator Ricky Presson, which, he contends, impermissibly revealed to the jury that he previously had been in trouble with the law and was "known to law enforcement." However, as distinguished from Robinson v. State, 735 So.2d 208 (Miss.1999) and Edlin v. State, 533 So.2d 403 (Miss.1988), on which Clay relies, no evidence of prior crimes, convictions or bad acts was introduced at trial. Rather, he now objects only to Presson's testimony regarding Mrs. Duke's identification of Clay from a photo line-up as well as his discussion with other investigators which led to the development of Clay as a suspect. While Clay's attorney made several timely objections during Presson's testimony, he did not object at trial to the lines of questioning to which he now objects. His right to raise these issues for appellate review, therefore, is forfeited. Walker v. State, 671 So.2d 581, 587 (Miss.1995); Kelly v. State, 463 So.2d 1070, 1073 (Miss.1985).
¶ 10. Clay, however, contends that the State's line of questioning was so egregious as to amount to plain error. As the State points out, "[t]he plain error doctrine permits this court to review errors committed during trial, even if they are not properly preserved on appeal, where those errors impact fundamental rights." Jackson v. State, 815 So.2d 1196, 1199(¶ 5) (Miss.2002). Clay does not articulate what fundamental rights were affected or how his rights may have been impacted by the testimony. Furthermore, no evidence of Clay's prior crimes or convictions, subject to limitation by Rule 404(b) of the Mississippi Rules of Evidence as discussed in Robinson, was even presented at trial. Accordingly, we find no merit to this assignment of error.

II. WHETHER THE CIRCUIT COURT ERRED IN FAILING TO GRANT A MISTRIAL AFTER THE JURY RETURNED TWO SEPARATE VERDICTS
¶ 11. The jury received separate instructions on the elements of the crimes of burglary of a dwelling and illegal trespass. Clay requested and received a lesser-included offense instruction, which allowed the jury to find him guilty of burglary, guilty of illegal trespass or not guilty. Instruction C-11, drafted by the defense, was worded as follows:
¶ 12. The Court instructs the jury that your verdict shall be returned to the Court in one of the following forms:
1. Should you find the defendant guilty of burglary of a dwelling, then your verdict shall be:

*327 "We, the jury, find the defendant guilty of burglary of a dwelling."
2. Should you find the defendant not guilty of burglary of a dwelling, but guilty of wilfull [sic] trespass, then your verdict shall be:
"We, the jury, find the defendant guilty of wilfull [sic] trespass."
3. Should you find the defendant not guilty of burglary of a dwelling and not guilty of wilfull [sic] trespass, then your verdict shall be:
"We, the jury, find the defendant not guilty."
The jury returned two verdicts: one finding Clay guilty of burglary of a dwelling; the other, guilty of illegal trespass. The circuit judge re-directed the jury's attention to Instruction C-11, emphasizing that there could be only one verdict in the case. He instructed the jury to return to the jury room and resume deliberations until a unanimous decision as to one form of the verdict was reached. After five minutes, the jury returned a verdict finding Clay guilty of burglary of a dwelling. Clay moved for a mistrial.
¶ 13. While Clay sets forth the general proposition that the circuit court erred in failing to grant his motion for a mistrial, he specifically faults the judge for finding that the jury was "confused," rather than "in conflict." Thus, because the judge did not instruct the jury pursuant to Sharplin v. State, 330 So.2d 591, 596 (Miss.1976), Clay asserts that his case should be reversed and remanded. A Sharplin instruction, however, is appropriate only when the jury is unable to agree on a verdict. The jury was polled and there is no evidence in the record to suggest that it was deadlocked. To the contrary, it shows only that instead of following the court's instruction to reach one verdict, the jury entered two separate but consistent verdicts: one finding Clay guilty of the crime for which he was indicted and the other convicting him of the lesser-included offense. Sharplin, therefore, is inapplicable.
¶ 14. Mississippi Code Annotated section 99-19-11 (Rev.2002) provides that "[i]f the verdict is informal or defective the court may direct it to be reformed at the bar." Further, Rule 3.10 of the Uniform Rules of Circuit and County Court Practice provides that "[i]f a verdict is so defective that the court cannot determine from it the intent of the jury, the court shall, with proper instructions, direct the jurors to reconsider the verdict." Accordingly, "[t]he general rule is that the court may require the jury to clear up an indefinite or ambiguous verdict and, `[i]ndeed, it is the duty of the court to direct the jury to reconsider their verdict when satisfied that there has been a palpable mistake.'" Anderson v. State, 231 Miss. 352, 360, 95 So.2d 465, 467 (Miss.1957) (quoting 23 C.J.S. Criminal Law §§ 1412, 1413). The trial judge correctly followed the law by re-instructing the jurors as to the proper form of the verdict as expressed in Instruction C-11 and sending them back to the jury room for further deliberations. Accordingly, there is no merit to Clay's assertion that the circuit court erred in not granting his motion for a mistrial.

III. WHETHER CLAY WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL BY HIS APPOINTED ATTORNEY
¶ 15. In his third assignment of error, Clay contends that his attorney failed to adequately pursue at trial his defense that he did not have the requisite intent to commit burglary. Notwithstanding his on-the-record decision not to testify, Clay now mentions, albeit only in passing, that given the evidence presented at trial, it was "imperative" for him to testify. His actual *328 argument on appeal, however, focuses on objections his attorney should have made and questions he should have asked on cross-examination.
¶ 16. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Simon v. State, 857 So.2d 668, 682 (¶ 22) (Miss.2003). To establish a claim of ineffective assistance of counsel, Clay must prove that under the totality of the circumstances (1) counsel's performance was deficient and (2) that the deficiency deprived him of a fair trial. Howard v. State, 853 So.2d 781, 796 (¶ 47) (Miss.2003). On matters of trial strategy, which form the basis of Clay's assignment of error, this Court generally defers to the judgment of counsel. Woods v. State, 806 So.2d 1165, 1169 (¶ 13) (Miss.Ct.App.2002). It is well-established that "`counsel's choice of whether to file certain motions, call witnesses, ask certain questions, or make certain objections falls within the ambit of trial strategy' and cannot give rise to an ineffective assistance of counsel claim." Howard, 853 So.2d at 796 (¶ 47) (quoting Jackson v. State, 815 So.2d 1196, 1201 (Miss.2002)). Accordingly, because Clay's claims fall wholly within the realm of trial strategy, there is no merit to the assignment of error.

IV. WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE VERDICT OF THE JURY
¶ 17. The circuit court denied Clay's motions for a JNOV and for a new trial. Clay now asserts that the evidence presented at trial does not support the jury's finding that he was guilty of burglary. He contends that his statement explained his presence in the house and suggests that the situation was simply a misunderstanding.
¶ 18. The jury is charged with weighing and considering conflicting evidence and the credibility of the witnesses. McClain v. State, 625 So.2d 774, 778 (Miss.1993). In questioning the sufficiency of the evidence, we are required to review that evidence in a light most favorable to the State, giving it the benefit of all reasonable inferences which may be drawn from it and accepting as true that evidence which supports guilt. Id. This court is authorized to reverse only where, with respect to one or more elements of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty. Id.
¶ 19. Similarly, a motion for a new trial asks the Court to hold that the verdict was contrary to the overwhelming weight of the evidence. Crowley v. State, 791 So.2d 249, 253 (¶ 15) (Miss.Ct.App.2000). When a motion for a new trial is made, this Court must accept as true all evidence that favors the jury's verdict. Youngblood v. State, 759 So.2d 479, 483 (¶ 17) (Miss.Ct.App.2000). "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998).
¶ 20. Our standard of review requires that we look not only at the evidence presented, but also at the reasonable inferences which may be drawn from it. McClain, 625 So.2d at 778. The jury, too, as the finder of fact, is entitled to consider not only the testimony of the witnesses, but all inferences that may be reasonably and logically deduced therefrom. Pryor v. State, 349 So.2d 1063, 1064 (Miss.1977). Although nothing was actually stolen from the house and Clay asserts that the incident was simply a misunderstanding, or at best, trespass, the jury could have inferred *329 from the testimony at trial that he broke into Mrs. Duke's house with the intent to steal.
¶ 21. Evidence was presented to show that Clay had approached Mrs. Duke at her house only a week before the break-in. On the afternoon of July 6, 2001, Mrs. Duke's car was not parked in front of her house and it was not apparent that she was at home. Her locked front door was kicked open and Clay entered the house. He fled when Mrs. Duke screamed for help. "Intent is an emotional operation of the mind, and it is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time." Dixon v. State, 240 So.2d 289, 290 (Miss.1970). Considering the facts of the crime, along with the evidence that Clay had just borrowed money from James Hopson to retrieve the title of his car from a "Cash for Title" business and within days after the incident gave Hopson the car as security for his debt, it reasonably may be inferred that Clay needed money and had the requisite intent to steal when he broke into Mrs. Duke's house. It was well within the jury's province to weigh these facts, and the inferences which could be drawn from them, against Clay's statement that he had asked for a drink of water and that the door broke when he stuck his foot across the threshold, thinking Mrs. Duke had invited him inside.
¶ 22. Looking at the evidence in a light most favorable to the State, we find that there is sufficient evidence to support the jury's verdict. Further we find that the evidence is not contrary to the verdict entered by the jury. The assignment of error is without merit.

V. WHETHER THE CUMULATIVE ERRORS AT TRIAL NECESSITATE REVERSAL OF CLAY'S SENTENCE AND CONVICTION
¶ 23. In his final assignment of error, Clay suggests that the cumulative effect of the errors at trial denied his right to a fair and impartial trial. Although Clay lists several cases, including King v. State, 857 So.2d 702 (Miss.2003), he neither sets forth any argument nor provides us with any clues as to the relevance of the cited cases. Where the appellant has provided no meaningful argument in support of an assignment of error he has raised, the issue is waived. King, 857 So.2d at 716 n. 3 (¶ 23); Jones v. State, 841 So.2d 115, 138 (¶ 70) (Miss.2003); Pate v. State, 419 So.2d 1324, 1325-26 (Miss.1982).
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF BURGLARY OF A DWELLING HOUSE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO LAUDERDALE COUNTY.
KING, C.J., BRIDGES, P.J., LEE, MYERS AND GRIFFIS, JJ., CONCUR. IRVING AND BARNES, JJ., NOT PARTICIPATING.