# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01917-COA

**DAMION LEQEUINN LEWIS A/K/A DAMION LEWIS A/K/A DAMIEN LEWIS A/K/A DAMION L. LEWIS A/K/A DAMION LEQEUNN LEWIS**                    APPELLANT

v.

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/11/2015 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSEPH SCOTT HEMLEBEN JASON DAVIS |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF FELONY AGGRAVATED DOMESTIC VIOLENCE AND SENTENCE OF TWENTY YEARS, WITH SEVEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, THIRTEEN YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A FINE OF $2,000 AND RESTITUTION OF $854.61 |
| DISPOSITION: | AFFIRMED: 04/04/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND GREENLEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Damion Leqeuinn Lewis was convicted of felony aggravated domestic violence in violation of Mississippi Code Annotated section 97-3-7(4) (Supp. 2013). Damion was sentenced to twenty years, with thirteen years suspended and seven years to serve in the custody of the Mississippi Department of Corrections. The circuit court denied the posttrial motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV). On appeal, we find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2.     Damion and Rosa Victor Lewis were married but separated. On June 15, 2014, Rosa traveled to Damion's home in Gulfport from her home in Bogalusa, Louisiana, in an attempt to reconcile the marriage.

¶3.     They planned to celebrate their anniversary and Father's Day with a visit to a casino and a comedy show. The show was to begin at 8 p.m. Rosa told Damion that she was running late and would not arrive at his home until after the show began. Damion and Rosa arrived just as the show ended. They met up with friends and went into a nightclub at the casino. They both consumed several alcoholic beverages, but neither admitted to being intoxicated.

¶4.     Damion and Rosa had a disagreement while leaving the nightclub. They argued during the ride back to Damion's home. The argument escalated into a physical altercation in Damion's bedroom. From the physical encounter, Rosa received injuries to her ear, face, and neck.

¶5.     Rosa drove herself to Garden Park Medical Center in Gulfport. Nurse Ellen Emile

2

was the first to encounter Rosa when she arrived. Emile testified that she was working at the triage station when Rosa came into the emergency room. She stated that Rosa was crying uncontrollably and was unable to explain what happened. Emile further testified that Rosa presented with red marks on the sides of her face, ear, and neck, and redness in each of her eyes. After she calmed down, Rosa informed the nurse that Damion struck her in the face, punched her on the ear, and pushed her onto a bed, where he strangled Rosa.

¶6.    Rosa was examined and treated by Dr. Ronnie Ali, the emergency-room physician on duty. Dr. Ali testified that Rosa's injuries were consistent with being hit on the ear with a fist. He observed blood in Rosa's ear and diagnosed her with a ruptured eardrum, which he believed resulted from an impact. Dr. Ali also testified that Rosa had marks around her neck that were consistent with strangulation. It was Dr. Ali's opinion that the redness in Rosa's eyes was "petechia" caused by strangulation. He stated that the petechia was caused by "an extreme amount of force" to Rosa's neck, which caused the "tiny little blood vessels . . . [to] explode and form a small bleed under the skin." After the assessment and review of Rosa's CT scan, Dr. Ali ultimately diagnosed Rosa's medical condition as assault to the head and neck.

¶7.    Nurse Emile notified the Gulfport Police Department of the assault. Officer Nicholas Guillot was dispatched to the hospital. He interviewed Rosa and took several photographs of her injuries. Officer Guillot and the patrol supervisor went to Damion's residence, arrested him, and transported him to the police station.

¶8.    Damion provided a statement to Detective Timothy Adams, an investigator with the

Gulfport Police Department. During the recorded interview, Damion admitted that he was "upset" by the events of the evening. He stated that he sent Rosa a text message, which indicated he was displeased because he had spent one hundred dollars on a show that they would likely miss. Damion also stated that he became upset while he was at the nightclub because he felt Rosa was "playing games."

¶9. After Damion recounted the events of the evening, Detective Adams asked Damion to describe the "physical part" of the altercation. Damion claimed that Rosa initiated the confrontation when she got into his face and pushed against his face with her hands. He further explained that Rosa's injuries must have been received when he and Rosa fell onto the bed, after Rosa began fighting him. Damion stated that his hand hit the side of Rosa's face as they were falling onto the bed. He denied using a closed hand to hit Rosa's face. When asked if he choked or strangled Rosa, Damion stated that he "applied a little pressure" to Rosa's neck after the two fell onto the bed. However, Damion stated that he only applied pressure while "pushing himself up off of her" and in order to get Rosa to stop attacking him. He did not specifically admit or deny that he strangled or choked Rosa.

¶10. According to Damion, the full encounter "occurred in one motion," and he felt as though he needed to protect himself. He also stated that the altercation happened so fast that maybe he "applied more force than [he] intended." Prior to the conclusion of the interview, Detective Adams photographed "a cut" on Damion's neck and scratches on his arm. Detective Adams later testified that he believed Damion's injuries were consistent with defensive wounds made by Rosa during the struggle.

4

¶11. At trial, Dr. Alan Koshan, an ophthalmologist, testified as an expert witness on behalf of Damion. He refuted Dr. Ali's conclusion that the red marks in Rosa's eyes were petechia. Instead, Dr. Koshan characterized the red marks as conjunctivitis caused by inflammation in the sinuses. Dr. Koshan did not believe that Rosa had been strangled. He opined that Rosa's injuries were inconsistent with the injuries of a typical victim of strangulation. He further pointed out that Rosa's respiratory system was intact, there was no damage to her trachea, and Rosa's primary complaint had been of pain rather than an inability to breathe.

¶12. Damion was indicted on a charge of felony aggravated domestic assault, in violation of Mississippi Code Annotated section 97-3-7(4). After a two-day trial, the jury returned a guilty verdict, and the circuit judge sentenced Damion to a prison term. He filed a timely motion for a new trial or, in the alternative, a JNOV, which was denied. It is from this judgment he now appeals.

ANALYSIS

*I.     Sufficiency of the Evidence*

¶13. Damion first argues that there was insufficient evidence to convict him. More specifically, he argues that the State failed to prove that he possessed the intent necessary to sustain a conviction for felony aggravated domestic abuse based on strangulation. He contends the appropriate conviction should have been misdemeanor domestic assault, rather than felony aggravated domestic abuse.

¶14. In a challenge to the sufficiency of evidence presented at trial, the Mississippi Supreme Court previously held:

> [I]n considering whether the evidence is sufficient to sustain a conviction in the face of a motion . . . for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.

*Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)) (internal quotation marks omitted). When analyzing the sufficiency of evidence "the relevant question is whether after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)).

¶15. Section 97-3-7(4)(a)(iii) required that the State prove that Damion was guilty of aggravated domestic violence, by establishing that he committed the offense of strangulation or attempted strangulation against his current or former spouse. "'Strangle' means to restrict the flow of oxygen or blood by intentionally applying pressure on the neck, throat or chest of another person by any means or to intentionally block the nose or mouth of another person by any means." Miss. Code Ann. § 97-3-7(9)(a).

¶16. Under our facts, the statute requires that the offense be committed or attempted against "a current or former spouse." It was undisputed that Rosa and Damion were legally married at the time of the incident.

¶17. Damion argues that the State failed to prove that he "intentionally" applied pressure to Rosa's neck. The appellate court "accepts as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn[.]" *Moore v. State*, 996 So.

6

2d 756, 760 (¶12) (Miss. 2008) (citation omitted).  Rosa testified that Damion placed "both his hands around [her] neck and began choking" her.  Rosa also testified that during the struggle, she and Damion moved from the bed to the floor, where Damion straddled his body over hers and continued to tighten his grip around her neck.  Rosa stated that she was unable to breathe and that she eventually blacked out from Damion's grip getting tighter around her neck.

¶18.   In addition, there was testimony from both medical professionals and law enforcement that the injuries were consistent with Rosa's account of the incident.  Dr. Ali testified that the red marks in Rosa's eyes resulted from strangulation.  Moreover, Dr. Ali opined that the red marks, known as petechia, resulted from the application of "an extreme amount of force" to Rosa's neck. Officer Guillot testified that he observed scratch marks on Rosa's neck and redness in her eyes.

¶19.   Detective Adams testified that, based on his interview with Damion, Damion admitted to choking Rosa. Damion's recorded statement was played during the trial.  However, Damion's admission that he choked Rosa was not heard on the recording.  Damion neither confirmed nor denied that he choked Rosa.  Instead, Damion's voice was heard explaining that there was "pressure because [his] weight was on her, but [he] came right back off her." Further, Damion's voice was heard stating that he "got up off her when he noticed the look in her eyes" and that he "may have applied more pressure than he intended to."

¶20.   When we consider the evidence in the light most favorable to the State, we find that there was sufficient evidence to convict Damion of felony aggravated domestic violence.

While Damion did not expressly admit that he choked Rosa, he did admit that he applied pressure to her neck. This explanation, Rosa's testimony, Dr. Ali's expert opinion, and the photographs of Rosa's injuries support the inference that Damion did in fact strangle his wife. In light of these facts, we find that any rational juror could have found beyond a reasonable doubt that all of the elements had been met by the State in proving felony aggravated domestic violence. This issue is without merit.

## II.    *Weight of the Evidence*

¶21.    Next, Damion argues the jury verdict is contrary to the overwhelming weight of the evidence. According to Damion, the State failed to prove that he intentionally strangled Rosa or that Rosa's air flow or blood flow was ever restricted. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, [an appellate court] will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18) (citation omitted). As we review this issue, we weigh the evidence in the light most favorable to the verdict. *Id.*

¶22.    While it is true that Dr. Koshan testified that the red marks in Rosa's eyes did not result from strangulation and were not petechia, this opinion was merely one factor of consideration that may have influenced the jury's verdict. If this conflicting testimony was the only substantive proof presented to the jury, Damion's argument for a new trial would have merit. However, both the photographic evidence of Rosa's injuries and the testimony of numerous witnesses that personally observed Rosa's injuries match up with Rosa's

8

account of the events that transpired on June 15, 2014.

¶23. Damion's contention that the photographs and testimony related to the redness in Rosa's eyes heavily influenced the State's case is without merit. The trial judge, in his discretion, granted Damion's request to redact the portions of Damion's recorded statement where Detective Adams, who was not a medical professional or expert, mentioned and defined petechia. Although the expert witnesses provided conflicting opinions regarding strangulation and petechia, this Court has held that resolving the conflict is a task for the jury as the "sole judge of the credibility of witnesses and the weight and worth of their testimony." *Camper v. State*, 24 So. 3d 1072, 1077 (¶22) (Miss. Ct. App. 2010) (quoting *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)). Thus, it is plausible that the jury found Dr. Ali's opinion more credible than that of Dr. Koshan, with regard to the source of the red marks in Rosa's eyes.

¶24. When we view this evidence in the light most favorable to the verdict, we do not find that the verdict was "so contrary to the overwhelming weight of the evidence that allow[ing] it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). Therefore, we find that the trial court did not abuse its discretion in denying a new trial.

### III. Jury Instructions

¶25. Finally, Damion argues that the jury instructions were confusing and did not allow the jury to consider the misdemeanor offense "in a straightforward way." Damion also claims that the jury's initial verdict, which was returned in a form that favored both felony and misdemeanor domestic assault, provided "inarguable support" for the lesser offense of

9

misdemeanor simple domestic violence.

¶26. This Court previously held that "[a] trial judge correctly followed the law by re-instructing . . . jurors as to the proper form of the verdict as expressed in [the jury instructions] and sending them back to the jury room for further deliberations." *Clay v. State*, 881 So. 2d 323, 327 (¶14) (Miss. Ct. App. 2004). Here, the trial judge instructed the jurors to return to deliberation, re-read the instructions, and return a verdict in the proper form. After which, the jurors returned a new verdict, in the proper form, and found Damion guilty of felony aggravated domestic violence.

¶27. Further, Mississippi Code Annotated section 99-19-11 (Rev. 2015) provides, "if [a] verdict is informal or defective [,] the court may direct it to be reformed at bar." Thus, Damion's argument is a mischaracterization of the jury's intent regarding the misformed verdict. The initial return of two separate but consistent verdicts, and the subsequent unanimous verdict for felony aggravated domestic violence, were properly attained. Accordingly, Damion's assertion of error for the circuit judge's denial of his motion for a new trial is without merit.

¶28. **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF FELONY AGGRAVATED DOMESTIC VIOLENCE AND SENTENCE OF TWENTY YEARS, WITH SEVEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, THIRTEEN YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A FINE OF $2,000 AND RESTITUTION OF $854.61, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**